[Civ. No. 31438. Second Dist., Div. Five. May 27, 1968.]

THOMAS J. FOLEY, Plaintiff, Cross-defendant and Appellant, v. U. S. PAVING CO., Defendant, Cross-complainant and Appellant.

Herbert Gall and John U. Gall for Plaintiff, Cross-defendant and Appellant.

Cowan & Harris, Henry N. Cowan and Edward L. Lascher for Defendant, Cross-complainant and Appellant.

STEPHENS, J.—The matter before us is by appeal and cross-appeal from a judgment in favor of plaintiff on the complaint and for defendant on the cross-complaint.

The facts are as follows: In 1957, F. Kenneth Millhollen and James V. O'Kane became the owners of U. S. Paving Co., a corporation. Millhollen and O'Kane were, at all times pertinent to this action, the sole stockholders and the principal officers of that corporation. (U. S. Paving Co. is hereinafter referred to as defendant and, where applicable, cross-complainant). At the same time, in 1957 Thomas J. Foley was an employee of C. O. Sparks and Monroe Engineering Company, a commercial paving company engaged in business similar to that of defendant. Millhollen, O'Kane and Foley had known each other, through business interests, for some time prior to 1957. In April 1957 defendant and plaintiff, through Millhollen and O'Kane, jointly or separately had discussions about plaintiff's becoming an employee of defendant as superintendent. Salary and bonus figures were discussed, but nothing materialized until the spring or summer of 1958. In July, several conversations were had between the parties going to the issue of potential employment of plaintiff by defendant.

The employment figure of $185 per week was finalized during these discussions. It was the contention of plaintiff during the trial that there was an oral agreement of equality of salary so far as Millhollen, O'Kane and Foley were concerned; this was denied by defendant. The court resolved this contention, on contradictory evidence, against the plaintiff. In addition to the salary for plaintiff, a bonus percentage was agreed upon for him. Since the case revolves around the construction of a relatively short written employment contract, it is set forth in full:

"STATEMENT OF UNDERSTANDING

"The following is the understanding between U.S. PAVING Co., a corporation, hereinafter called 'the Corporation,' and THOMAS J. FOLEY, of Los Angeles, California, hereinafter called Foley:

"1. DUTIES. Foley shall act as superintendent for the Corporation and perform the duties ordinarily incident to that

of a superintendent of a business corporation of like character and to perform such other work in connection therewith as the Corporation may require. Foley shall devote his working time exclusively to the business affairs of the Corporation. Foley, if elected, shall serve as a Vice President of the Corporation.

"2. COMPENSATION. For all services rendered and to be rendered by him to the Corporation Foley shall receive $185.00 per week from the Corporation during such period as Foley shall render the services required of him by the Corporation, plus an additional compensation consisting of 20% of the net profit (as hereinafter defined) for each fiscal year of the Corporation, such amount to be paid in the manner and at the times hereinafter specified. Foley shall be entitled to receive the fixed salary of $185.00 per week for such period as he shall actually perform services for the Corporation, and as to the additional compensation he shall receive 20% of the net profits for each fiscal year providing that he has rendered services for the full fiscal year. If he has not rendered services during the full fiscal year, he shall receive 1/12 of 20% of the net profits for the fiscal year for each month during the fiscal year that he has rendered services to the Corporation.

"The term 'net profits' hereinabove mentioned is defined as profits of the Corporation before any Federal taxes on income, determined by the auditors of the Corporation according to accepted accounting principles and practices.

"The report or computation of net profits made by the firm of certified public accountants selected as the regular auditors of the Corporation made in the form usually used by them for this Corporation shall be binding upon the Corporation and upon Foley as to the amount of net profits. Accordingly, the additional compensation as hereinabove defined shall not be paid to Foley until after the close of a fiscal year and the delivery to the Corporation of the said report or computation of net profits made by said firm of certified public accountants.

"3. Foley agrees that before executing and submitting any bid or offer on behalf of the Corporation for any job, he shall first submit the same for approval to either President James V. O'Kane or to Vice President F. Kenneth Mullhollen.

"4. It is expressly understood and agreed that the Corporation has not employed and is not by this Statement of Understanding employing Foley for any fixed term or period of time and that the Corporation may terminate Foley's services at any time without legal cause and similarly Foley may terminate his services to the Corporation at any time without legal cause.

"DATED at Los Angeles, California, this 2nd day of September, 1958.

U. S. PAVING Co., a
corporation
/s/ James V. O'Kane
Its President
/s/ F. Kenneth Millhollen
Its Vice President
/s/ Thomas J. Foley"

The employment contract was prepared by the attorney for defendant and delivered to plaintiff for his consideration. Though plaintiff had the document in his possession for several days, he did not obtain legal advice about it. On September 2, 1958, employment commenced under the terms of the executed contract. Throughout the period of plaintiff's employment, the books of defendant were kept on a fiscal basis, the year running from July 1st of one year to June 30 of the next. The books and records were reasonably available to plaintiff throughout his employment, though no financial statement was submitted to him.

At the time of the execution of the employment contract, the two officers, Millhollen and O'Kane, each received a salary of $20,000 per year, and this continued through the period ending June 30, 1960. For the year ending June 30, 1961, Millhollen and O'Kane were each paid $36,000, and then their salaries were raised each successive year to $36,250, then to $40.250. All of the said salaries were deducted from the profits of defendant prior to the computation of plaintiff's bonus. The changes in salaries referred to were not made known to plaintiff, and came to his knowledge, for the first time, in September of 1962. The system of bookkeeping remained the same throughout the employment period, the variance objected to being only the increase of salaries without notice or consent of plaintiff. No discussion is shown in the record relative to any bonus payment to plaintiff until that for the year 1961 was received. It was for the fiscal year ending June 30, 1961, that the first raise in salaries from the $20,000 each to $36,000 each affected the bonus relationship to the earned profit.

Following receipt of the 1961 bonus statement, plaintiff discussed with defendant what he believed to be a low bonus. The amount of the bonus was recognized as low, but the manner of accounting was explained as the cause of the amount. No mention was made of any change of salaries for defend-

ant's officers. Another discussion and complaint by plaintiff were had at the close of the 1962 year, and at that time the increased salaries were noted by plaintiff. The evidence is conflicting as to what was said relative to any adjustment, but it is plaintiff's contention that the working out of an adjustment was to be considered. On November 11, 1962 plaintiff met with an injury and was unable to perform his duties until April 26, 1963, at which time plaintiff informed defendant he would return to work May 15, 1963. On May 3, 1963, plaintiff was terminated. Throughout the period from the injury to termination, plaintiff received his weekly pay of $185, and on September 15, 1963, defendant tendered $4,375 in full payment of the bonus for the year ending June 30, 1963 and for a portion of the following year; this tender was refused by plaintiff.

There is a further issue relative to vacation time for plaintiff. Plaintiff contends he was entitled to two weeks vacation per year and that the time not taken was cumulative for future vacations. The defendant concedes the vacation period of two weeks, but denies the cumulative right. The evidence is in conflict, and the trial court's determination concurring with plaintiff's contention is founded upon sufficient evidence.

The prime contentions of plaintiff are twofold. Having unsuccessfully contended below that there was an oral agreement that there was to be equality of salary between plaintiff and the officers of defendant, he argues that there was an implied condition of the employment contract prohibiting the defendant from raising executive salaries without a discussion and agreement with plaintiff; that in the instant case the bonus amounts actually due plaintiff could be ascertained by looking at the books of account. The defendant seeks a recomputation based upon the theory that it had tendered at least all that was due, and in fact overpaid plaintiff.

As is readily apparent, the increase of defendant's salary would reduce the net profits before taxation. It is then the plaintiff's position that defendant, so far as the computation of net profit under the employment contract is concerned, cannot increase the salaries of its officers and thereby defeat the bonus effect of the contract without the consent of the employee.

The trial court settled the issue as to any actual agreement between the parties to maintain equal salaries. Its determination on conflicting evidence cannot be disturbed on appeal.

Whether the contract as executed protects plaintiff from the effect of any such salary increase without his notice and consent, in the nature of an implied provision, is another matter. The present thrust of plaintiff's appeal is that to give meaning to the incentive (bonus) portion of the employment contract, the salary ($20,000) received by defendant's officers during the first two years of the employment should form the basis of the implied agreement to not raise salaries. The defendant's primary answer to plaintiff's contention of an implied covenant is that it is a material variance from the issues raised at the trial level. With this answer we do not agree.

■ Though a specific agreement of equality of salary was unsuccessfully pressed during the trial, the issue of unfair advantage and fair treatment under an employer-employee contract is always one within the equitable action of the accounting sought here. (*Freeman* v. *Donohoe*, 65 Cal.App. 65 [223 P. 431].) ■ It is conceded that the general proposition that one must deal with one's partners, joint venturers or employees in good faith is a correct rule of law, and that *Nelson* v. *Abraham*, 29 Cal.2d 745 [177 P.2d 931] so holds.

In *Nelson* there was an agreement for plaintiff to receive one-third of the net profits from an Oakland ice business. Thereafter, a San Francisco branch operation was first acquired then sold for a profit. Plaintiff claimed a one-third interest in the net profit. The court sustained plaintiff's right to the accounting under the contract, whatever his association status.

In the instant case we are not concerned with plaintiff's status; he was an employee; but this does not lessen his right to fair dealing at the hands of his employers. ■ We concur with the plaintiff that every employment contract includes a covenant of good faith and fair dealings between the parties. (*Flying Tiger Line, Inc.* v. *United States Aircoach*, 51 Cal.2d 199 [331 P.2d 37].) The implied covenant of good faith and fair dealings forbears either party from doing anything which will injure the right of the other to receive the benefits of the agreement. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883].)

Obviously, the written contract does not specifically cover the issue of salaries to defendant's officers, and we follow the trial court's finding on the evidence that there was no specific oral agreement to maintain equality. ■ Where express

covenants fail to cover phases necessary to make workable and meaningful the covenants expressed, implied covenants may be resorted to. (*Coleman Engineering Co.* v. *North American Aviation, Inc.,* 65 Cal.2d 396, 406 [55 Cal.Rptr. 1, 420 P.2d 713] ; *Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232 [73 P.2d 1163].)

There was no duty upon plaintiff to examine the records to ascertain whether fair play was practiced. No waiver can be imposed upon him, though it may show his poor business acumen. He made no complaint until his own knowledge warned him of some error or unfairness; then he accepted what appeared to be a reasonable explanation. Upon recurrence of a like unhappiness of bonus return, he again pressed for an answer, and saw for the first time what was occurring. He objected, and satisfaction of his objection was not accomplished before his injury and ultimate termination.

An expression contained in plaintiff's brief succinctly states what occurred in this case, and we quote: ''We have before the court a situation where an employee was given an incentive contract, based upon circumstances as they existed at the time of its execution. I am sure that the parties at the time of the execution of the contract expected great benefits on both sides of the contract. The employer would reap the benefits of an industrious employee, adding profits to the company, and the employee would be compensated in direct relation to the growing profits of an infant enterprise. The profits of the corporation, probably beyond the reasonable expectation of the parties to the contract, did, in fact grow, but Plaintiff's participation in the growth was thwarted by the acts of Defendant. As Plaintiff neared his goal, the Defendant reset the goal post, and the closer Plaintiff came, the further back the goal was set.'' The device of defendant to unilaterally increase salaries cannot be approved when the patent result was to decimate the incentive clause in the contract. The urged explanation by defendant, that the officers were worth what they were paid, is not an acceptable answer. This does not justify the ''moving of the goal post.'' Had plaintiff not been worth the obviously increasing bonus payable under the contract, the defendant had the obvious right to terminate the employment of plaintiff, or to renegotiate his contract. This, defendant did not do, but siphoned off the increasing benefits from the top without plaintiff's acquiescence or knowledge.

The plaintiff is entitled to 20 percent of the sums deducted

yearly for salaries of Millhollen and O'Kane in excess of $20,000 each.

Naturally, our holding must be confined to the peculiar facts of this case. Nothing we have said should be construed to mean that an employee who, as part of his pay, is to receive a certain percentage of the employer's profits, has a veto over all increased expenditures, including salaries of executives and other employees. In the usual case, competitive pressures on the employer, his self-interest, and a division between management and ownership will be adequate safeguards against any dissipation of profits to the employee's detriment. In this case, we deal with large increases of salaries granted to the two corporate officers who, as owners of all the stock, had not only the ultimate power to grant the increases, but were also the very persons out of whose pockets plaintiff's bonus ultimately would have come. Were it not for the covenant of fair dealing, the only restraint on the conduct we see in this case would be a situation in which the pill of a larger bonus to plaintiff is not quite as bitter as a lost capital gain.

 Plaintiff contends that the trial court erred in computing his period of entitlement to the bonus for the fiscal year 1963; that it was 10 months, and not 7 months as found by the trial court. The finding setting the bonus computation at 7 months cannot be justified under the evidence. There is no question but that plaintiff was considered an employee until May 3, 1963. He was paid his contractual $185 each week until terminated. The cutoff date for his entitlement to bonus payments after the date of his injury, November 11, 1962, is unsupported by any contractual construction. He was either an employee, or he was not, and so long as his employment continued under the contract in question, he was entitled to both his weekly pay *plus* the bonus. The proper period of computation was for 10 months, not 7 months.

 Plaintiff next contends that he was entitled to interest from May 3, 1963 on the sums found due, and not from the date of judgment, as ordered by the trial court. We concur with the plaintiff. Section 3287 of the Civil Code[1] is determinative of the issue.

---

[1]Civil Code section 3287: "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city,

The case of *Pizer* v. *Brown*, 133 Cal.App.2d 367 [283 P.2d 1055] holds that although the exact amount of indebtedness was not known at the time the complaint was filed, this fact did not render a claim unliquidated. The claims were therein capable of being made certain by calculations within the meaning of section 3287. (*Petersen* v. *Lyders*, 139 Cal.App. 307, 309 [33 P.2d 1032].) In *Pizer*, the court stated (p. 374): "Furthermore, the only necessity for an accounting was the result of the appellants' failure . . . to account for the funds [they] had converted. (*Meyers* v. *Texas Co.*, 6 Cal.2d 610, 618 [59 P.2d 132].)"

We see no distinction in principle between the instant case and that considered in *Mass* v. *Board of Education*, 61 Cal.2d 612 [39 Cal.Rptr. 739, 394 P.2d 579]. In that case, a teacher's salary and fringe benefits were held certain, or capable of being made certain, within the meaning of section 3287. The court in that case, referring to section 3287, said (p. 624): "This section authorizes prejudgment interest on salary payments from the date of accrual to the entry of judgment," and (at p. 625): "Each salary payment in the instant case accrued on a date certain. Unless the suspension itself can be sustained and the board thus relieved of any obligation whatsoever, the salary payments become vested as of the dates they accrued. If plaintiff had not been wrongfully suspended, he would have obtained the benefit of the moneys paid as of those dates; he has thus lost the natural growth and productivity of the withheld salary in the form of interest."

As we have noted initially in this opinion, the appeals lay both from the holding upon the complaint and from the holding upon the cross-complaint.

The first contention on appeal on behalf of defendant-cross-complainant is that the court erred in finding that plaintiff was entitled to his bonus for seven months, rather than for four months. We have heretofore determined this contention adversely to cross-complainant, and need not here repeat our conclusions. ▮▮▮▮ The second contention is that the court erred in its finding that plaintiff was entitled to be paid vacation pay in addition to his salary and bonus. The thrust of

city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

"(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

this contention is insufficiency of the evidence to justify the finding. The record contains conflicting evidence as to vacation periods and programs, and the resolution of this issue by the trial court may not be upset. The reading into the contract of employment the terms and periods of vacations was well within the duties of the trial court in resolving the issues before it. The evidence was adequate to sustain its finding in this regard.

Judgment is reversed as to the amount of the bonus to which plaintiff is entitled, allowance of interests and costs, with directions that a further accounting and computation be conducted to ascertain the bonus to which plaintiff is entitled in accordance with this opinion, and to enter judgment accordingly. As to the matter of costs, this is left to the judgment of the trial court at time of rendering judgment in conformity herewith. In all other respects, the judgment is affirmed.

Kaus, P. J., and Hufstedler, J., concurred.

A petition for a rehearing was denied June 18, 1968, and the opinion was modified to read as printed above. The petition of the defendant, cross-complainant and appellant for a hearing by the Supreme Court was denied July 24, 1968. Sullivan, J., and Mosk, J., were of the opinion that the petition should be granted.