721 P.2d 174

**Herman S. SPERO, Plaintiff-Appellant,**

v.

**LOCKWOOD, INC., a corporation, Defendant-Respondent.**

No. 15772.

Supreme Court of Idaho.

May 29, 1986.

Rehearing Denied July 24, 1986.

James G. Reid (argued), and Jeffrey R. Christenson, Boise, for plaintiff-appellant.

James B. Lynch (argued), and Charles R. Clark, Boise, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from a judgment entered by the district court in favor of defendant-respondent-employer Lockwood following a six-day bench trial. Plaintiff-employee Spero had brought the action against Lockwood for wrongful discharge. We *affirm.*

Spero was hired by Lockwood as a salesman in August 1969, and due to economic cutbacks was laid off in December 1969. Spero was rehired by Lockwood in 1974, and in 1977 was transferred to a district which included Idaho. Spero was paid a fixed salary plus a commission on all parts and machinery purchased in his district from Lockwood. In 1983 Lockwood fired Spero, and despite repeated requests, Spero was never given a reason for the termination.

The district court, following trial, made meticulous and detailed findings of fact. He found that Spero had been fired by Lockwood without just or good cause and held that the burden to establish just or good cause was on the employer. In making such findings the district court noted the conflict between the testimony of two of Lockwood's supervisors, and specifically held that the testimony of the supervisor favoring Spero's position was more credible on the issue of lack of good or just cause. Although the court found that Spero had been critical of his superiors, the court found that Spero had "ceased his criticism

within reasonably acceptable bounds," and that based "only upon rumor and hearsay" Spero had been accused of slandering one of his superiors. The court found, "In a nutshell it was an arbitrary and capricious discharge within the rubric of 'just' or 'good cause.'"

The principal issue before the trial court was whether Spero's admittedly employment-at-will for no fixed duration or term, had been converted into a job security contract by the adoption of a personnel policy manual by Lockwood in 1977. The trial court made specific and detailed findings regarding the manual. The court found that the manual was not communicated to plaintiff and that Spero's obtaining a copy "appears to have been little more than a fortuity; and not the stuff of contractual understandings or formation." He did not receive or request a copy in relation to his job security, nor was there sufficient evidence that Spero ever read or relied upon the manual or continued his employment in reliance on its terms. Lockwood was free to change the manual at any time and a certain level of executives could disregard or modify the manual at their pleasure. The court noted, "Even Mr. Spero never testified that he thought the manual was a contract." Hence, the district court concluded that the employment-at-will relationship which began in 1974 was not modified by the policy manual.

■ Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability. *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977).

■ The findings of the district court in the instant case are supported by substantial competent, although conflicting, evidence, and will not be disturbed upon appeal. I.R.C.P. 52(a); *Circle C Ranch Co. v. Jayo*, 104 Idaho 353, 659 P.2d 107 (1983); *Reuth v. State*, 103 Idaho 74, 644 P.2d 1333, 1336 (1982). Although the trial court found that Spero had prevailed on the issue of a lack of just or good cause for his termination, and upon the issue of damages, the trial court found against Spero on the issue of whether the initial at-will employment had, by the personnel policy manual, been converted into a contract of employment from which Spero could only be terminated for just or good cause. We find no error.

The decision of the district court is affirmed. Costs to respondent.

DONALDSON, C.J., and BAKES, J., concur.

BISTLINE, Justice, dissenting.

The majority's opinion does not apply Idaho law on this issue. Conspicuously absent is any substantive discussion of what contravenes this state's public policy with respect to the discharge of an employee.

In *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 589, 701 P.2d 208, 209 (1985), this Court last year held that an employee "hired pursuant to a contract which specifies the duration of the employment, or limits the reasons for which the employee may be discharged" is not an employee "at will." Excluding those two situations, the current law in Idaho is that an employer can discharge an employee at will *except* "when the motivation for discharge contravenes public policy." *Id.*[1]

In *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 333–34, 563 P.2d 54, 57–58 (1977), a unanimous Court set forth factors to consider in determining what constitutes "public policy":

---

**1.** The majority fails to acknowledge this exception. I do not view this silence to mean disapproval of the exception.

The employment at will rule is not ... an absolute bar to a claim of wrongful discharge. As a general exception to the rule allowing either the employer or the employee to terminate the employment relationship without cause, *an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy.* The following cases illustrate this exception to the general rule.

In *Petermann v. International Brotherhood of Teamsters*, 174 Cal. App.2d 184, 344 P.2d 25 (1959), the court stated, "[g]enerally, such a relationship is terminable at the will of either party (citations omitted) for any reason whatsoever (citations omitted). However, the right to discharge an employee under such a contract may be limited * * * by considerations of public policy." The court continued, quoting from 72 C.J.S. *Policy* at page 212, to state, "*public policy 'is the principles under which freedom of contract or private dealing is restricted by law for the good of the community.* Another statement, sometimes referred to as a definition, is that *whatever contravenes good morals or any established interests of society is against public policy.'*" In *Petermann*, the plaintiff/employee had been subpoenaed to testify before the California Legislature and was instructed by his employer to give false testimony. He was fired for answering truthfully. In reversing a judgment on the pleadings for the defendant, the court stated that coercing perjury is "patently contrary to the public welfare."

In *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973), the plaintiff was fired for reporting an injury to her arm in order to file for workmen's compensation. The court held that such an act was in clear contravention of public policy that the plaintiff had stated a claim upon which relief could be granted.

In *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974), the plaintiff claimed she was harassed by her foreman because she refused to go out with him and that his hostility, condoned if not shared, by the defendant/employer's personnel manager, ultimately resulted in her being fired. The court said, "*We hold that a termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract.*"

In *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975), the court concluded, "there can be circumstances in which an employer discharges an employee for such a socially undesirable motive that the employer must respond in damages for any injury done." The court held that the plaintiff should be awarded compensatory damage for being fired because she served on jury duty against the wishes of her employer. (Emphasis added.)

In Idaho, *the legislature has explicitly stated the public policy of this state as it relates to the discharge of an employee:* [T]he *public policy* of this state is declared to be as follows: Economic insecurity due to unemployment is a *serious menace* to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of national and state interest and concern which requires appropriate action *to prevent its spread* and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires *protection* against this greatest hazard of our economic life. This can be provided by *encouraging* employers to provide more stable employment.... I.C. § 72–1302 (emphasis added).

In view of the legislature's express declaration concerning involuntary unemployment, it is not readily seen how the discharge of an individual, which, in the words of the district judge, was "arbitrary and capricious," can be viewed as anything but violative of public policy. If the public

policy of this state—as expressed by our legislature—is to eradicate or minimize involuntary unemployment, then how is that policy not violated by the arbitrary and capricious acts of the employer here? The majority's failure to address this issue does a disservice to the people of Idaho.

The cases relied upon in *Minidoka Irrigation* are being *ignored;* they teach that a firing done in bad faith or with malice, or which contravenes societal norms or established public interests, violates public policy. *That is the exact situation we have here:* the Idaho legislature has expressly stated that involuntary unemployment is against public policy; the district judge below found that Spero's discharge was arbitrary and capricious—in other words an act of bad faith and malice. If this does not contravene the legislature's express statement of this state's public policy, one wonders what does? If Idaho's public policy has not been violated here, the people of Idaho may well wonder whether that which Chief Justice Donaldson said last year in *MacNeil, supra,* is today considered to be of any substance. If it is, then we should be reversing the district court today. Accordingly, I dissent.

HUNTLEY, Justice, dissenting.

I agree fully with Justice Bistline's dissent. I write to discuss an alternate ground which also indicates the majority's result is incorrect.

The evidence was sufficient in this case to find that Lockwood's adoption of the policy manual changed Spero's contract from an at-will employment contract to an agreement under which Spero could be released only for cause. Justice Shepard's opinion apparently found the following facts sufficient to hold that Spero's contract was at-will, in spite of Lockwood's adoption of the personnel policy manual:

> The [district] court found that the manual was not communicated to plaintiff and that Spero's obtaining of a copy "appears to have been little more than a fortuity; and not the stuff of contractual understanding or formation." He did

not receive or request a copy in relation to his job security, nor was there sufficient evidence that Spero ever read or relied upon the manual or continued his employment in reliance on its terms. Lockwood was free to change the manual at any time and a certain level of executives could disregard or modify the manual at their pleasure. The court noted, "Even Mr. Spero never testified that he thought the manual was a contact."

I find that analysis inadequate. Seemingly, the majority asserts that none of the district court's findings may be overturned unless clearly erroneous. However, our deference applies only to the district court's factual findings. I.R.C.P. 52(a). If the district court incorrectly applied the law to this case, we may of course overturn the district court's ruling.

While determining whether a contract exists is a question for the trier of fact, *Johnson v. Allied Stores,* 106 Idaho 363, 369, 679 P.2d 640, 646 (1984), I believe the district court applied the wrong rule in determining whether a contract existed. The district court should have followed this reasoning from *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880, 892 (1980):

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, what-

ever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation." (Citations omitted).

The district court attempted to distinguish *Toussaint* from the present case on two grounds. The district court erred on both counts. First, the district court held that Toussaint had received the policy manual in response to questions about job security while Spero did not. I find the two situations to be indistinguishable. Spero testified that, on several occasions, his supervisors assured him that "as long as you do your job, you're on the team." Dan Walters, Spero's immediate supervisor, testified that "sales were all that was important." Moreover, the Michigan court, in the above-quoted passage, stated that no specific pre-employment negotiations were necessary to modify an employment contract. As a second ground for distinguishing *Toussaint*, the district court cited the fact that Toussaint received the manual at the initial hiring and Spero did not receive his until years after hiring. As stated above, the Michigan court found no need for implicit bargaining concerning the personnel manual. Further, Spero could not have received the manual until at least 1977, because the company did not adopt the manual until then. While Spero may have received the manual "fortuitously," the benefit to the employer still justifies enforcing the manual's provisions.

If the district court had applied the above language from *Toussaint*, the court would have had to have found that Spero's employment contract had been modified to require cause to terminate the employment relationship.

I see a compelling reason to adopt the *Toussaint* standard. The policy reasons behind the at-will employment doctrine do not apply with great force to the advanced economy of the late 20th century. The at-will employment doctrine provides a subsidy to commercial concerns by creating a presumption that an employee may be discharged at the employer's will unless, in the majority's words, "an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged . . . ." Such a subsidy may have been necessary in the 18th and 19th centuries when industry struggled to develop the American economy—the worker's need for security paled in comparison with the need of society to tame our wild continent. In today's highly developed and competitive economy, commercial concerns need no such subsidy vis-a-vis their employees. Non-union employees usually have to accept the contract which their employer offers; they have no leverage to negotiate for special treatment. Therefore, where an employee has proven that he performs his job adequately and productively in accordance with company policy, the judiciary should discourage employers from arbitrarily terminating employment. This argument becomes even more compelling when an employee may have implicitly relied on a company policy not to fire the employee except for cause. Yet the majority does not discuss the desirability of the at-will doctrine, instead discussing Lockwood's hiring Spero as if we could expect that elaborate negotiations had taken place between the two. We should have taken the first step today to allow the at-will employment doctrine to make its well-deserved exit from the law of Idaho.

The end seems inevitable. Several states have acted already to eliminate or limit the scope of the at-will employment doctrine. Some have taken the tack of the Michigan court in implying contractual terms from actions of the employer such as adopting a personnel policy manual. *See, e.g. Toussaint, supra; Yartzoff v. Democrat Herald Publishing Company,* 281 Or. 651, 576 P.2d 356, 359 (1978) (concurring with the Michigan court in holding that a jury could find consideration in the actions of the employer in adopting an employer handbook). Other states have taken the approach of implying a covenant of good faith and fair dealing in all contracts, thereby limiting

the reasons for which an employee may be discharged. *See, Foley v. U.S. Paving Co.,* 262 Cal.App.2d 499, 505, 68 Cal.Rptr. 780, 784 (1968) (applying the covenant of good faith and fair dealings to an employee incentive contract.) I believe these approaches will dominate the law in the not-too-distant future. We should not shackle ourselves with an outmoded approach.