**ZIPSER et al. v. EWING.**

No. 226, Docket 22273.

United States Court of Appeals Second Circuit.

Argued May 14, 1952.

Decided June 23, 1952.

Holmes Baldridge, Washington, D. C., Myles J. Lane and Robert Martin, New York City (Edward H. Hickey, Herman Wolkinson and Leonard B. Zeisler, Washington, D. C., of counsel), for appellant.

Stuart McCarthy, New York City (David I. Shivitz and Edmund B. Hennefeld, New York City, of counsel), for appellees.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The 1948 Amendment in explicit terms retroactively defined "employee" so as to make applicable the common law definition. The Senate Report[2] on that amendment cited with approval our opinion in Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715, 717, where we said, "The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said, though the regulation redundantly elaborated it." In Ringling Bros.-Barnum & Bailey Combined Shows v. Higgins, 2 Cir., 189 F.2d 865, 867, 869, we adhered to our Radio City Music Hall test, going no further than to suggest as relevant "such matters as the right to control and direct the performance not only as to the result, but also as to the details and means by which that is accomplished," with emphasis on the notion "that it is the right to direct which is important and it is not necessary that the employer actually direct or control the manner in which the services are performed." In that connection we referred to the Regulations and observed that they treated "insurance agents" as "clear cases of independent contractors".

So far as we can tell, this insurance agent operated under the contract which, incidentally, categorized him as an "independent contractor" and not an "employee" in the usual pattern of such agents. Office facilities, forms and stationery, were pro-

2. Sen.Rep.No.1255, 80th Cong., 2d Sess., p. 4.

vided by the company; the contract was terminable upon notice; no fixed hours were set; he could sell insurance of other companies only under special circumstances; his advertisements had to be approved; a manual of rules and regulations for the salesmen's guidance in selling and servicing policies was furnished. Under the manual, the agent could not receive payments, issue receipts or policies, pay out benefits, etc., without first assuring himself of certain facts, or transmitting the required information to the company. All paper work had to be done in strict conformity with the rules laid down for issuing and servicing policies in the manual.

There is some dispute as to whether the agent was required to service policyholders he had originally solicited. The Federal Security Administration maintains, relying chiefly on the agency agreement and the agents' Manual, that Zipser was a general employee with specific servicing duties. The Chairman of the Appeals Council in an affidavit below testified: "The soliciting agent was *required* by the rules and regulations of the Society to collect first premiums and to cooperate with the Society in the collection of subsequent premiums; to perform services in connection with payment of death and disability claims; furnish the Society with information necessary to determine whether the death of the insured was the result of accident or suicide; whether an insured was entitled to disability benefits; assist policyholders in reinstating lapsed policies, in executing change of beneficiaries and changes of premium payment forms; in executing and submitting proofs of loss; in handling settlement checks and generally in servicing his policy holders."

The Referee's original decision, on the other hand, said that, "In addition to obtaining new applications, the claimant performs other services in connection with the Society's business; he assists policyholders in executing change of beneficiary and change of premium payment forms, in executing and submitting proofs of loss, in

delivering settlement checks and in generally servicing his policyholders. *There is no evidence that such services are expressly required of him."* Our reading of the agency agreement and of the agent's Manual fails to disclose any obligation on the agent's part to perform such services. The Manual merely directs how they shall be performed. We do not think therefore that the agreement or anything in the record supports the FSA's assertion that Zipser was required to perform such services to original policyholders. Insurance agents like Zipser are "competent salesmen, almost entirely dependent upon their own initiative, skill, and personality for success, working upon their own time, at their own expense, and deriving their remuneration from the results of their work." As such they are not "employees." Dimmitt-Rickhoff-Bayer Real Estate Co. v. Finnegan, 8 Cir., 179 F.2d 882, certiorari denied 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605, cf. United States v. Kane, 8 Cir., 171 F.2d 54. The company did not and, under the agreement, could not have required the agent to work full time for it, canvass any particular territory, or, with any particular frequency, contact any particular prospect, use any particular sales technique, require regular reports, confine himself to selling a particular amount or kind of policy. Zipser did not even have a minimum quota to sell during the year. See Brady v. Periodical Publishers' Service Bureau, 6 Cir., 173 F.2d 776; Benson v. Social Security Board, 10 Cir., 172 F.2d 682; Party Cab Co. v. United States, 7 Cir., 172 F.2d 87, 10 A.L.R.2d 358; Broderick, Inc., v. Squire, 9 Cir., 163 F.2d 980; McGowan v. Lazeroff, 2 Cir., 148 F.2d 512. See also the state cases holding insurance agents to be independent contractors, not employees, e.g., Northwestern Mutual Life Ins. Co. v. Tone, 125 Conn. 183, 4 A.2d 640, 121 A.L.R. 993.

We conclude that the agent here was not an employee under the Act and that consequently his commissions should not have been deducted from the social security benefits due him.

Affirmed.