129 Mich. App. 610 (1983)
341 N.W.2d 841
NATIONWIDE MUTUAL INSURANCE COMPANY
v.
COMMISSIONER OF INSURANCE
Docket No. 61690.
Michigan Court of Appeals.
Decided October 11, 1983.
Downs, Zagaroli & Downs, P.C. (by Tom Downs and Michael A. Zagaroli), for petitioner.
Frank J. Kelley, Attorney General, Louis J. Caruso, Solicitor General, and Harry G. Iwasko, Jr., and E. John Blanchard, Assistants Attorney General, for respondent.
Before: ALLEN, P.C., and BRONSON and WAHLS, JJ.
PER CURIAM.
The Commissioner of Insurance *613 appeals as of right from a December 4, 1981, circuit court order reversing a final decision of the commissioner which held that Nationwide Mutual Insurance Company had violated §§ 2116 and 2012 of the Insurance Code of 1956 and had attempted to violate § 1209 of the code, as amended by 1979 PA 145. MCL 500.1209, 500.2116, 500.2012; MSA 24.11209, 24.12116, 24.12012. Nationwide has cross-appealed as of right.
Nationwide is an affiliate group of foreign insurers engaged in the sale of automobile insurance and home insurance in this state. Since the mid-1950's, Nationwide has sold such insurance through agents whose authority is delineated in a document entitled "Agent's Agreement". The standard agent's agreement provided for exclusive representation in the absence of written consent by Nationwide, as follows:
"Exclusive Representation. It is agreed and understood that you will represent us exclusively in the sale and service of insurance. Such exclusive representation shall mean that you will not solicit or write policies of insurance in companies other than those parties to this Agreement, either directly or indirectly, without the written consent of these Companies. It is not intended that the incidental use of voluntary or statutory state or federal insurance plans, or other similar agreements, shall be a violation of this clause."
For some years, Nationwide's agents were not required to receive written authorization before obtaining licenses to represent other insurance carriers. Beginning in the mid-1970's, however, Nationwide required its agents to obtain a letter of authority which permitted its agents to place business with other insurance carriers only when policy applications were unacceptable to, declined by or cancelled by Nationwide, a condition known as *614 the "right of first refusal". A letter of authority was routinely issued to any agent requesting one.
On November 13, 1979, the essential insurance act, 1979 PA 145, amending the Insurance Code of 1956, was enacted, although it did not become effective until January 1, 1981. Section 2116 of the act provides that an insurance agent licensed to represent one or more insurers is under a mandatory duty to provide each eligible person seeking automobile insurance or home insurance with the lowest available premium quotation for the forms or types of insurance coverage offered by the insurers represented by the agent. MCL 500.2116(1)(a); MSA 24.12116(1)(a), as amended by 1980 PA 461, § 1, effective January 15, 1981.
On February 4, 1981, the Insurance Bureau issued a notice of opportunity to show compliance to Nationwide alleging, inter alia, that Nationwide's policy of requiring a right of first refusal might cause its agents to violate § 2116(1)(a). It was also alleged that termination of an agent by Nationwide for failure to comply with the policy would violate § 1209 of the Insurance Code of 1956, as amended, MCL 500.1209; MSA 24.11209, which prohibits termination of agents except for statutorily prescribed reasons, and that preventing its multilicense agents from informing a prospective insured of alternate insurance sources constituted unfair competition and a restraint of trade in violation of § 2012 of the Insurance Code of 1956, as amended, MCL 500.2012; MSA 24.12012.
On March 30, 1981, Nationwide issued a memorandum to its multilicense agents, directing them to cancel their appointments with other insurers by April 30, 1981, or face enforcement of their agent's agreement, i.e., termination. The memorandum provided, in full:
*615 "The Michigan Insurance Commission has recently challenged the right of Nationwide permitting its agents to hold appointments with other companies for brokerage purposes under an exclusive agency system. In doing so, the Commissioner has expressed the alternative that multiple appointments are not necessary because in their opinion, an exclusive agent who is properly licensed with only Nationwide can share commissions with an agent who is properly appointed by another company.
"This opinion has paved the way for you as a Michigan Nationwide agent to terminate appointments held with other companies and limit your licensing to the Nationwide family of companies. Therefore, you will be expected to resign appointments with other insurance companies by April 30, 1981 to be in compliance with the Brokerage Policy of the Nationwide Insurance Companies.
"It is recognized that an agent may be unwilling to follow this direction. However, any agent failing to cancel appointments held with other companies will be in violation of the contractural obligation for exclusive representation (Paragraph 4) and subject to enforcement thereof. After April 30, 1981 Michigan will be consistent within the uniform Brokerage Policy of Nationwide Insurance Company."
On April 30, 1981, the circuit court issued a temporary restraining order prohibiting Nationwide from terminating its agents for refusing to cancel their appointments with other insurers.
Following an administrative hearing on May 8 and 11, 1981, the Commissioner of Insurance, serving as the hearing officer, issued her final decision. She concluded that Nationwide's agent's agreements, brokerage policies, letters of authority, and related acts and practices violated § 2116(a)(1) which requires multilicense agents to quote the lowest possible premium to prospective insureds and constituted unfair trade practices in violation *616 of § 2012. Because the temporary restraining order issued by the circuit court prevented Nationwide from terminating those multilicense agents refusing to terminate their authority with other insurers, Nationwide was found not to have yet violated § 1209. Nationwide was fined $25,000 and ordered to cease and desist from further violations.
On June 18, 1981, Nationwide petitioned the circuit court for review of the commissioner's final decision and sought declaratory relief. On December 4, 1981, the circuit court issued its opinion and order. The court agreed with the commissioner that Nationwide agents licensed to represent other companies are not "exclusive" agents of Nationwide and, as multilicensed agents, they were bound to divulge premium quotations, as mandated by § 2116, without affording the "right of first refusal" to Nationwide.
The court held, however, that a reading of the commissioner's June 16, 1981, final decision did not "sufficiently reveal extraneous evidence to allow for a finding" that Nationwide's March 30, 1981, letter was an attempt to terminate agents for fulfilling their statutory requirements under § 2116. Further, the court held that it was not violative of § 1209 for Nationwide to rescind its letters of authority previously issued to its agents, and that Nationwide was not precluded from terminating any agent who refused to cancel his licenses with other companies following proper notice.
Generally, administrative decisions are to be affirmed if supported by material, competent, and substantial evidence on the record as a whole, Const 1963, art 6, § 28, MCL 24.306(d); MSA 3.560(206)(d). The commissioner's factual determinations under § 2012 are to be reviewed under the *617 more lenient standard set forth in § 2041 of the Insurance Code of 1956, as amended, MCL 500.2041; MSA 24.12041. See Michigan Life Ins Co v Comm'r of Ins, 120 Mich App 552; 328 NW2d 82 (1982). That section provides that the commissioner's findings of fact "if supported by the preponderance of the evidence, shall be conclusive".
The crux of the commissioner's complaint is that Nationwide's enforcement of its contractual right of first refusal requires its multilicense agents to violate § 2116 which provides in relevant part:
"(1) A duly licensed insurance agent licensed to represent 1 or more insurers shall, as a condition of licensure, do all of the following:
"(a) Provide each eligible person seeking automobile insurance or home insurance the lowest available premium quotation for the forms or types of insurance coverage which are offered by the insurers represented by the agent and which are sought by the eligible person." (Emphasis added.)
Nationwide contends on cross-appeal that this section is inapplicable to its agents because of the contract calling for exclusive representation. In essence, Nationwide contends that its agents are not "licensed to represent one or more insurers".
Although the prefatory language in the exclusive representation clause in the standard agent's agreement mandates exclusive representation of Nationwide by its agents, the paragraph allows for an exception. The agents may solicit or write policies for other companies if Nationwide gives its written consent. We agree with the circuit court that, as "a matter of definition and fundamental logic", once Nationwide grants such consent, as it routinely did, exclusivity of representation ceases to exist. Such multilicensed agents, who in fact *618 represented other insurers in addition to Nationwide, were bound by § 2116 to divulge premium quotations without affording "the right of first refusal" in favor of any company that the agents represented.
On appeal, the commissioner first asserts that the circuit court erred in reversing her determination that Nationwide's threatened termination of those agents who refused to cancel licenses with other insurers would violate § 1209. Section 1209 restricts an insurer's right to terminate an agent and provides, in pertinent part:
"(3) As a condition of maintaining its authority to transact insurance in this state, an insurer transacting automobile insurance or home insurance in this state shall not cancel an agent's contract or otherwise terminate an agent's authority to represent the insurer with respect to automobile insurance or home insurance, except for one or more of the following reasons:

* * *
"(c) A violation of this act.
"(d) Failure to perform as provided by the contract between the parties.

* * *
"(4) Subsection (3) shall not be construed as permitting a termination of an agent's authority based primarily upon any of the following:

* * *
"(c) The performance of the agent's obligations under chapter 21."
Although an agent's refusal to terminate his licenses with other insurers may have violated the contract between Nationwide and the agent, the commissioner reasoned that the agent's refusal was not a statutory basis for terminating the agency, as the attempted termination of authority *619 by Nationwide was based primarily on Nationwide's fear that the multilicense agents would not adhere to its brokerage policy of providing it with a right of first refusal.
The circuit court, on the other hand, concluded that Nationwide's message in its March 30, 1981, memorandum was simply that the company was rescinding its written consent to its agents' nonexclusive representation, and requiring that the agents exclusively represent Nationwide, as the standard agent's agreement permitted it to do. The court determined that, rather than an attempt to terminate agents for complaince with § 2116, the memorandum was an attempt by Nationwide to obtain statutory compliance by its agents.
The commissioner does not suggest that exclusive representation is violative of the statute and, in fact, agrees that it is not. The commissioner argues, however, that, having allowed its agents to become multilicensed, Nationwide is prohibited from terminating its agents for refusing to cancel their additional licenses.
We find the trial court's reasoning persuasive. We agree that it is not violative of the statute for Nationwide to rescind its letters of authority and direct its agents to terminate their appointments with other insurers in accordance with the contractual agremeent between the parties. Exclusive representation is clearly not prohibited by, or contrary to the spirit of, the Insurance Code as amended. Nationwide did not cause its agents to violate the code by demanding, pursuant to the agents' agreements, that they represent Nationwide exclusively. Accordingly, we hold that, while dismissal of multilicensed agents who refused to afford Nationwide the right of first refusal would be violative of § 1209, dismissal of agents who *620 refused to terminate their appointments with other insurers would not.
Having concluded that termination of agents who refused to comply with the March 30, 1981, memorandum would not contravene § 1209, we need not address Nationwide's argument that § 1209 violates the Due Process Clause of the United States Constitution.
The commissioner also asserts that the trial court erred in rejecting her determination that Nationwide committed an unfair trade practice in violation of MCL 500.2012; MSA 24.12012. That section provides:
"The following are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:
"Entering into any agreement to commit, or by any concerted action committing, any act of boycott, coercion or intimidation resulting or tending to result in unreasonable restraint of the business of insurance."
The commissioner made the following findings:
"34. By its agent agreements, brokerage policies, letters of authority, and related acts and practices, Nationwide entered into agreements to commit acts of boycott, coercion, or intimidation resulting in or tending to result in unreasonable restraint in the business of insurance in violation of Section 2012. It has effected a boycott by its agents of other insurers in that there is a concerted refusal by those agents to deal with other insurers except where Nationwide has rejected coverage. The unreasonableness of this restraint is evidenced by its violation of Section 2116."
"38. Nationwide knew or reasonably should have known it was in violation of Section 2012. Nationwide committed approximately 66 violations of this section".
*621 Although the trial court concluded that Nationwide's brokerage policy of requiring a right of first refusal violated § 2116, it rejected, without explanation, the commissioner's determination that this practice also constituted an unfair trade practice in violation of § 2012. We agree with the commissioner that Nationwide's enforcement of its right of first refusal after January 1, 1981, in violation of § 2116, afforded the insurer an advantageous market position that the Insurance Code, as amended by 1979 PA 145, was designed to prohibit. The plain effect of a right of first refusal is to reduce competition which is otherwise fostered by the lowest possible premium quotation requirement. The restraint on the business of insurance resulting from enforcement of the right of first refusal is clearly unreasonable in light of the requirements of § 2116.
The trial court's determination that Nationwide's enforcement of its brokerage policy of a right of first refusal after January 1, 1981, was not contrary to § 2012 is reversed, and the decision and order of the commissioner as to that issue is reinstated. The remainder of the trial court's decision and order is affirmed.