732 P.2d 699

Steve ANDERSON, Plaintiff-Appellant,

v.

FARM BUREAU MUTUAL INSURANCE COMPANY OF IDAHO, An Idaho Corporation and Its Affiliates and Subsidiaries; and Western Community Insurance Co., An Idaho Corporation; and Western Farm Bureau Life Insurance Co., a Colorado Corporation, Defendants-Respondents.

No. 16319.

Court of Appeals of Idaho.

Feb. 2, 1987.

Alan G. Lance, Meridian, for appellant.

Richard D. Petersen, Pocatello, and Richard C. Fields and Robert C. Grisham (argued), Boise, for respondents.

BURNETT, Judge.

This appeal comes to us from a certified partial summary judgment dismissing a claim for breach of contract and wrongful termination of employment. The claimant, Steve Anderson, sued for general damages and recovery of wrongfully withheld employment benefits after he was terminated as an insurance agent. We are asked to decide whether the district court erred in finding that Anderson was not an "employee" and, therefore, was not entitled to recover the purported benefits. We also must decide whether Anderson was terminated under circumstances violating his contract rights or public policy. For the reasons set forth below, we affirm the judgment.

The essential facts are undisputed. Steve Anderson entered into a dual series of contracts with several affiliated insurance companies. Pursuant to one series of contracts, Anderson agreed to act as special agent for Western Farm Bureau Life Insurance Co. (Western Farm Bureau) in the sale of life and health insurance. Under the second series of contracts, Anderson agreed to sell property and casualty insurance for Farm Bureau Mutual Insurance Company of Idaho (Farm Bureau Mutual) and Western Community Insurance Co. (Western Community). Anderson's contracts with these companies were updated periodically, but the portions relevant here were unchanged throughout his tenure as an agent with the affiliated companies. As compensation, Anderson received fixed commissions on the sale of each policy.

Anderson was a successful agent. In fact, by 1982 he had become Western Farm Bureau's most highly rated life insurance agent in Idaho. However, Anderson's sales activities also began to arouse controversy. Management of the affiliated Farm Bureau companies discovered that Anderson was placing insurance policies with competing insurers. Anderson was warned that placing insurance elsewhere, without the Farm Bureau companies' consent, violated the terms of his agency con-

tracts. Nonetheless, Anderson continued placing policies elsewhere without seeking consent. Eventually, Anderson was told that if he did not discontinue these activities, his Farm Bureau contracts would be terminated. Anderson refused to comply. The contracts then were terminated. Anderson sued in district court for wrongful discharge and breach of contract. On cross-motions for summary judgment, the district court ruled in favor of the insurance companies.

Preliminarily, we restate the familiar standards governing motions for summary judgment. Such a motion should be granted only when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). When the motion is supported by depositions or affidavits, the adverse party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e).

▮ In general, a party opposing summary judgment is entitled to favorable inferences from the underlying facts. However, when the evidentiary facts are not disputed and the judge rather than a jury will be the ultimate trier of fact, the judge may draw the inferences he or she deems most probable since the judge alone would be responsible for drawing such inferences from the same facts at trial. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). In the present case, neither party requested a trial by jury pursuant to I.R.C.P. 38(b). Moreover, where— as here—the opposing parties both have moved for summary judgment on the same evidentiary facts and on the same theories and issues, the parties effectively have stipulated that there is no genuine issue of material fact. *Id.* Therefore, the judge in this case was entitled to draw all reasonable inferences from the facts. *Jones v. EG & G Idaho, Inc.*, 111 Idaho 591, 726 P.2d 703 (1986); *Edwards v. Conchemco Incorporated*, 111 Idaho 851, 727 P.2d 1279

(Ct.App.1986). Insofar as our review embraces factual matters, we will accept the judge's factual determinations where they are reasonably supported by the record.

## I

Anderson first contends that upon termination he was entitled to recover certain employment benefits. He bases this claim upon the theory that he was an "employee" and that his "employers," the insurance companies, were required to make Social Security, worker's compensation insurance and federal and state unemployment insurance contributions on his behalf. Anderson further claims that, as his employers, the insurance companies were obliged to withhold federal income taxes from his pay. The companies, on the other hand, steadfastly maintained that Anderson was an independent contractor; consequently, they did not owe him the duties that employers owe employees. The district court agreed with the companies. So do we.

## A

Much time and effort was devoted to the employment issue during the discovery phase of this litigation. While there was no conflict in the evidence presented on the cross-motions for summary judgment, each side argued a view of the facts supporting its interpretation of the relationship created by the agency contracts. Because the facts are essentially undisputed, the proper characterization of that relationship is one of law for an appellate court to make. *Zaremba v. Miller*, 113 Cal.App.3d Supp. 1, 169 Cal.Rptr. 688 (Cal.App.Dep't Super.Ct. 1980); *Little v. Poole*, 11 N.C.App. 597, 182 S.E.2d 206 (1971).

▮ The integral test in Idaho for determining whether a person is an employee or an independent contractor is whether a contract gives, or the "employer" assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain results. *Burdick v. Thornton*, 109 Idaho 869, 712 P.2d 570 (1985); *Burns v. Nyberg*, 108 Idaho 151, 697 P.2d 1165

(1985); *Ledesma v. Bergeson,* 99 Idaho 555, 585 P.2d 965 (1978); *Merrill v. Duffy Reed Construction Co.,* 82 Idaho 410, 353 P.2d 657 (1960). This analysis applies to insurance agents as well. *Glynn v. M.F.A. Mut. Ins. Co.,* 363 Mo. 896, 254 S.W.2d 623 (1953). In a case involving an insurance agent, one appellate court has listed indicia which ordinarily earmark an independent contractor in contrast to an employee:

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

> The presence of no particular one of these indicia is controlling. Nor is the presence of all required. They are considered along with all other circumstances to determine whether in fact there exists in the one employed that degree of independence necessary to require his classification as independent contractor rather than employee.

*Little v. Poole, supra,* 182 S.E.2d at 209. Accordingly, an insurance agent whose function is solely to bring about contractual relations between his principals and others on his own initiative, without being subject to the principal's direction as to how he shall accomplish this result, is ordinarily held to be an independent contractor. *Id.*

■ We apply the same reasoning in the present case. The following facts, gathered from uncontroverted statements in affidavits and depositions indicate that both parties viewed Anderson's role as that of an independent contractor. The insurance companies failed to exercise control over the time, method and manner of his performance.

1. Anderson was not required to work specific office hours. He decided his own office hours and vacation dates.

2. Anderson was free to use his own presentation and solicitation methods. He was free to decide on which prospective clients to call.

3. Anderson was not limited to any specific territory; he was free to solicit business anywhere he was licensed.

4. Anderson was not required to make any reports to the companies other than production reports.

5. Anderson hired and paid his own secretarial help.

6. Anderson purchased some of his own equipment for use in his business.

7. Anderson incurred business expenses without reimbursement.

8. Anderson's compensation was in the form of commissions. (A "base salary" arrangement with Farm Bureau Mutual and Western Community was simply in lieu of auto insurance renewal commissions and was subject to reduction for lower productivity.)

9. Anderson filed his own tax returns as a self-employed person. The insurance companies treated him as an independent contractor for tax purposes.

10. The contracts were terminable at will by either party.

If these were the only facts before us, we would have little difficulty in concluding that Anderson was an independent contractor. However, this conclusion also draws support from explicit provisions in the parties' contracts. The Farm Bureau Mutual/Western Community contract in effect at termination stated:

> It is the mutual intent of the parties that Agent is not an employee of the Companies for any purpose but is an independent contractor for all purposes and in all situations in carrying out the provisions of this agreement. Nothing contained herein shall be construed to create the relationship of employee and employer between the Companies and Agent.

And the Western Farm Bureau contract in effect at the same time provided:

> Nothing in this contract shall be construed to create the relationship of employer and employee between the Company and you. It is the mutual intent of the parties hereto that you are not an employee of the Company for any purpose but are an independent contractor for all purposes and in all situations in carrying out the provisions of this contract. As such, you have the right to control the activities and means by which the provisions of this contract are carried out and the right to exercise independent judgment as to the persons from whom applications for insurance or annuity policies will be solicited, and the time, place and manner of soliciting and servicing policyholders of the Company.

■ As in this case, where the rights of third persons are not involved, a party is bound by contracts he voluntarily and knowingly signs. *Daniel v. Pacific Northwest Bell Tel. Co.*, 20 Wash.App. 444, 580 P.2d 652 (1978). Anderson never claimed ignorance of the fact that the contracts treated him as an independent contractor. Neither has he argued that the contracts were tainted by any fraud or overreaching on the part of the Farm Bureau companies. In these circumstances, the characterization of Anderson as an independent contractor is binding.

### B

Because Anderson was not an employee, it broadly appears that any claim of employment benefits would fail. None of the purported benefits was provided by contract. Thus, no contractual duty was breached. In addition, even were we to assume that a tort duty could exist in situations where an employer fails to provide employee benefits, the fact that Anderson was not an employee would eliminate liability on that ground. Against this general backdrop, we will now dispose of each specific claim.

■ It is clear beyond dispute that coverage under workmen's compensation laws is dependent upon the existence of an employer/employee relationship. *In re Sines*, 82 Idaho 527, 356 P.2d 226 (1960); I.C. §§ 72–102(9), (10) and (12), 72–204. Anderson was not an employee of the Farm Bureau companies. Therefore, the insurers were under no duty to make workmen's compensation insurance payments on his behalf. *Cf. Burdick v. Thornton*, 109 Idaho 869, 712 P.2d 570 (1985); *Burns v. Nyberg*, 108 Idaho 151, 697 P.2d 1165 (1985); *Ledesma v. Bergeson*, 99 Idaho 555, 585 P.2d 965 (1978).

■ Similarly, the Social Security Act (FICA), which includes the provisions of the Federal Unemployment Tax Act (FUTA), recognizes the common law definition of independent contractor and excludes such relationship from the burden of the tax. *United States v. Mutual Trucking Co.*, 141 F.2d 655 (6th Cir.1944); 26 U.S.C. §§ 3121(d)(2), 3306(c)(14). As an independent contractor, Anderson was obligated to make the FICA and FUTA payments himself. *See generally* Annot., *Employer-Employee Relationship*, 37 A.L.R.Fed. 95 (1978). Our holding is in accord with the leading case on this topic, *Zipser v. Ewing*, 197 F.2d 728 (2nd Cir.1952). In *Zipser*, the court concluded that a life insurance agent who worked his own hours at his own expense, who had no designated territory, who was required to contact no particular prospects, and who was characterized by his insurance company as an independent contractor, was not an employee of the insurance company and, therefore, commissions earned by him were not treated as wages under the Social Security Act.

■ Identical reasoning applies to the claims for Idaho state unemployment insurance taxes. Idaho Code § 72–1316(d)(1), a part of the Employment Security Law, provides as follows:

> Services performed by an individual for remuneration shall, for the purposes of the employment security law, be covered employment:
>
> (1) Unless it is shown:

(A) That the worker has been and will continue to be free from control or direction in the performance of his work, both under his contract of service and in fact, and

(B) That the worker is engaged in an independently established trade, occupation, profession or business.

Section 72–1316A(k) goes on to provide specifically that employment exempt from coverage under state law includes that "[s]ervice performed by an individual for a person as an insurance agent ..., if all such service performed ... is performed for remuneration solely by way of commission." Since Anderson received "remuneration solely by way of commission," this section relieved the Farm Bureau companies of any obligation to pay state unemployment insurance taxes on his behalf.

Our analysis comports with rulings in other jurisdictions where substantially similar statutes have been applied to insurance agents. *See Gordon v. District Unemployment Compensation Board*, 402 A.2d 1251 (D.C.Ct.App.1979) and cases cited therein; *See also* Annot., *Social Security—Insurance Agents*, 39 A.L.R.3d 872 (1971). In addition, the Idaho courts have held that earlier versions of the Employment Security Act were inapplicable to independent contractors. *E.g., Link's School of Business v. Employment Security Agency*, 85 Idaho 519, 380 P.2d 506 (1963). The same result would follow if the issue turned on the individual's common law status as an independent contractor. *See In re Pacific Nat. Life Assurance Co.*, 70 Idaho 98, 212 P.2d 397 (1949).

Anderson next contends that the Farm Bureau companies were required by federal law to withhold income taxes from his pay. They failed to do so and, instead, Anderson took his own withholding as a self-employed person. Anderson claims that he overpaid these taxes because they should have been withheld at the lower employee rate. This argument is without merit.

The determination of whether an individual is an employee for purposes of employment taxes under federal law is governed by Section 530 of the Revenue Act of 1978. It provides, in pertinent part, as follows:

(a) Termination of certain employment tax liability for periods before 1980.

(1) In general.—If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period ending before January 1, 1980, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) Statutory standards providing one method of satisfying the requirements of paragraph (1).—For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

This convoluted language focuses on whether the taxpaying employer has

"treated" an individual as an employee. The statute refers specifically to treatment for employment tax purposes, not to the broader day-to-day treatment under the common law test for determining whether an individual is an employee. *Ridgewell's, Inc. v. United States*, 228 Ct.Cl. 393, 655 F.2d 1098 (1981).[1] Anderson never has been "treated" as an employee. Therefore, our inquiry is whether the Farm Bureau companies had a "reasonable basis" for treating him as an independent contractor under subsection (a)(2). The uncontroverted affidavits of Farm Bureau management indicate that they fully complied with the requirements listed in § 530(a)(2). The companies relied on judicial precedent and past audits. Their treatment of Anderson was consistent with a widespread practice in the insurance industry. Because this evidence is undisputed, we hold that the companies had a reasonable basis for treating Anderson as an independent contractor. They were not obligated to withhold taxes from his pay.[2]

■ Anderson's final claim is that, as an employee, he was entitled to an award in lieu of unprovided benefits such as medical, dental and group life insurance, pension plan payments, and vacation and sick-leave pay. As an independent contractor Anderson had no right to receive employee compensatory benefits. *Daniel v. Pacific Northwest Bell Tel. Co., supra.* None of these benefits was provided in the agency contracts. We conclude that no such benefits were owed to Anderson.

## II

We now turn to Anderson's contention that he is entitled to damages because his termination was wrongful. Again, the salient facts are not in dispute. Each of the contracts in force at the time of Anderson's termination required him to place insurance with the Farm Bureau companies ahead of competing companies. Thus, the contract with Farm Bureau Mutual and Western Community described Anderson as "an independent insurance agent pursuant to the laws of the State of Idaho," but it required Anderson to give Farm Bureau products "first priority in placing insurance." The Western Farm Bureau contract was even more restrictive, requiring Anderson to obtain "written approval" for placing insurance elsewhere. Both contracts also provided that they could be terminated by either side on ten days' notice. Anderson has raised no issue on appeal concerning the adequacy of the notice he received. Consequently, regardless of whether Anderson's activities violated the "first priority" or "written approval" requirements, the dispositive question before us is whether Anderson was properly terminated at will.

■ For the sake of discussion we will assume—but we do not decide—that the limited protection afforded by law to employees at will also applies to independent contractors. The rule in Idaho, as in most states, is that unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the

1. Some language in Section 530 seems to indicate that the common law inquiry may apply in certain situations. Subsection (c)(2) states: "The term 'employment status' means the status of an individual, under the usual common law rules applicable in determining the employer-employee relationship, as an employee or as an independent contractor...." However, because Anderson is also an independent contractor under the common law approach, he still would not prevail on this question. *See Simpson v. Commissioner*, 64 T.C. 974 (1975); *Bell v. Commissioner*, 13 T.C. 344 (1949); Annot., *Tax Withholding—"Employees"*, 51 A.L.R.Fed 59 (1981).

2. By disposing of this question on the ground that Anderson was an independent contractor,

we do not necessarily imply that a claim could be made by an employee against the employer. Some courts have held that aggrieved taxpayers must bring their suits against the federal government. *See Dupont Glore Forgan Incorporated v. American Telephone and Telegraph Company*, 428 F.Supp. 1297 (S.D.N.Y.1977), *affirmed without opinion*, 578 F.2d 1367 (2d Cir. 1978), *cert. denied*, 439 U.S. 970, 99 S.Ct. 465, 58 L.Ed.2d 431; *Kent v. Northern California Regional Office of the American Friends Services Committee*, 497 F.2d 1325 (9th Cir.1974). However, in the *Dupont* case, the court suggested that a cause of action in tort might lie where an employer's conduct causes taxes to be over-withheld.

reasons for which the employee may be discharged, the employment is at will of either party. The employer may terminate the relationship at any time for any reason without incurring liability. *Jones v. EG & G Idaho, Inc.*, 111 Idaho 591, 726 P.2d 703 (1986); *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (1977). The only general exception to this rule is that an employer may be liable if the discharge is for a reason contravening public policy. The public policy exception has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights or privileges. *Staggie v. Idaho Falls Consolidated Hospitals, Inc.*, 110 Idaho 349, 715 P.2d 1019 (Ct.App. 1986). *Cf. Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (employee discharged for refusing to commit perjury); *Frampton v. Central Indiana Gas Company*, 260 Ind. 249, 297 N.E.2d 425 (1973) (employee discharged for filing worker's compensation claim); *Monge v. Beebe Rubber Company*, 114 N.H. 130, 316 A.2d 549 (1974) (employee discharged for refusing to "date" her supervisor); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (employee discharged for serving on jury duty).

▮ In this case Anderson contends that he was discharged in violation of public policy because his activities were protected by I.C. § 41–1023(3). The statute provides:

An "independent insurance agent" is an agent, as defined in section 41–1021, Idaho Code, who is not owned or controlled by any insurer or group of insurers and whose agency agreement with any insurer or group of insurers does not prohibit the representation of other insurers or groups of insurers ... *No agent other than an "independent insurance agent" shall be represented to the public as an independent insurance agent or agency.* [Emphasis added.]

This language does not bar an insurance company from imposing restrictions on competitive sales activities by its agents. It simply states that if such restrictions are imposed, the agent is not an "independent insurance agent" and cannot be represented as such to the public. The statute protects the public, not insurance agents.

Anderson was never held out to the public as an independent agent. Consequently, his contracts did not violate I.C. § 41–1023(3). Although the contract with Farm Bureau Mutual and Western Community referred to Anderson as an "independent insurance agent," this description would merely support an argument that Anderson had not violated the contract. As noted earlier, that is not the issue here. The issue is whether Anderson's termination at will, upon presumably adequate notice as provided in the contract, violated a public policy. We hold that it did not.[3]

▮ Anderson raises another public policy issue with respect to the consequences of his termination. He contends that he has been wrongfully deprived of uncollected commissions, renewal commissions and service bonuses. It is well settled that an insurance agent has no vested right to compensation under an agency contract after termination. *Canada v. Allstate Insurance Company*, 411 F.2d 517 (5th Cir. 1969). An agent's right to commissions, salary or other compensation upon termination is governed by the terms of the agency contract. *Mopper v. Circle Key Life Insurance Company*, 172 N.W.2d 118 (Iowa 1969); *Bushong v. Hart & Keenan*

---

3. Our research has disclosed that at least one state has adopted legislation that requires all multilicensed insurance agents to provide customers with the lowest available premium quotations for the forms or types of insurance coverage offered by the insurers represented by the agent. *See Nationwide Mutual Insurance Company v. Commissioner of Insurance*, 129 Mich. App. 610, 341 N.W.2d 841 (1983). In *Nationwide*, the Michigan court held "first refusal" provisions violative of the statute. However, the court also held that the insurers would not be prohibited from terminating agents who refused to cancel their appointments with competitors because exclusive representation was not contrary to the spirit of the code.

*And Co., Inc.*, 64 A.D.2d 814, 407 N.Y.S.2d 295 (1978); *Stockmen's Insurance Agency, Inc. v. Guarantee Reserve Life Insurance Company of Hammond, Indiana*, 217 N.W.2d 455 (N.D.), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 108 (1974); *Cox v. Ohio National Life Insurance Company*, 250 Or. 7, 438 P.2d 998 (1968).

■ In this case, the Farm Bureau Mutual and Western Community agreement provided for "service bonus" commissions upon termination if "the agent ... does not compete with the Companies for a period of one year after he has terminated." The agreement then defined competitive activity:

> The agent shall not own, operate or be employed as an agent, independent contractor or employee of any other insurance company or agency, selling or brokering the same or similar type of insurance as sold by Companies or compete in any other way with Companies for a period of one year from the date of termination within the territory assigned to agent in the agency contract between Companies and Agent.

The Western Farm Bureau contract provided for payment of "first year" commissions and renewal commissions with the following conditions:

> To continue to be eligible for any payment under this section you must refrain from engaging in "competitive activity" for a period of two years from the date of termination of this contract. If, at any time within such two-year period you engage in "competitive activity," then no further payments under this section will be made to you or on your behalf at any time. "Competitive activity" is hereby defined to mean any representation of or employment by any person, corporation, or association, other than the Company or the Farm Bureau casualty insurance company now operating in the state in which this contract is signed, in the solicitation in such state of applications for insurance of the general kind or kinds

then being offered in such state by the Company or by said Farm Bureau casualty insurance company, or in the supervision of persons soliciting such applications in such state.

The record discloses that Anderson triggered these provisions by soliciting customers and selling insurance in competition with the Farm Bureau companies within weeks of his termination.

Anderson argues that such provisions are anti-competition covenants and, as such, are void as restraints of trade. This characterization is overbroad. Agency contracts often do contain non-competition covenants. These covenants usually require the agent to refrain from working in the insurance business for certain time periods and within certain geographical limitations. They will be upheld if they are ancillary to employment and are reasonable in their application to the covenantor, the covenantee and the general public. *Insurance Center, Inc. v. Taylor*, 94 Idaho 896, 499 P.2d 1252 (1972); *Marshall v. Covington*, 81 Idaho 199, 339 P.2d 504 (1959).[4] However, the provisions set forth in the contracts before us are not restrictive covenants in this sense. They do not prohibit competition; they simply impose contractual forfeitures. Provisions of this type generally are not considered restraints of trade. *See generally Rochester Corporation v. Rochester*, 450 F.2d 118 (4th Cir. 1971).

Concededly, these forfeitures impose a cost for engaging in competition. But the agent, through his competitive activity, mitigates the cost by soliciting customers to buy insurance from the new carriers he represents. The strong weight of judicial authority upholds such agreements even when they are unrestricted in time or territory. *Southern Farm Bureau Life Insurance Company v. Mitchell*, 435 So.2d 745 (Ala.Civ.App.1983); *McMahon v. Monarch Life Insurance Company*, 345 Mass. 261, 186 N.E.2d 827 (1962); *Hudson v. North Carolina Farm Bureau Mutual Insur-*

---

4. For a full discussion concerning restrictive covenants and insurance agents see Annot., *Insurance Agent Placements*, 42 A.L.R. 4th 1072 (1985).

*ance Company, Inc.,* 23 N.C.App. 501, 209 S.E.2d 416 (1974); *Bohrnstedt v. Travelers' Ins. Co.,* 123 Or. 539, 262 P. 938 (1928); *Bobbitt v. National Comp Associates,* 597 S.W.2d 28 (Tex.Civ.App.1980); 16B APPLEMAN, INSURANCE LAW AND PRACTICE § 9007 (Rev. ed. 1981); 4 COUCH, CYCLOPEDIA OF INSURANCE LAW § 26A:242 (2d ed. 1984).

▆▆▆▆ Here, we hold that by engaging in competitive activity shortly after his contract was terminated, Anderson forfeited his right to the service bonuses, uncollected commissions and renewal commissions.[5] This holding also disposes of Anderson's final contention, that the companies should pay him the "value" of his former business. He ascribes such value to uncollected commissions and renewal commissions on poli-

cies placed by him. Because Anderson was not discharged in contravention of public policy, and because he contractually forfeited his right to these commissions, he has no separate claim for the "value" of his business.

The judgment of the district court is affirmed. Costs to respondents. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.

---

5. In some circumstances, where the company terminates an agent at will, the agent's loss of earned but uncollected commissions might seem inequitable. In the present case, the forfeiture of such commissions is provided in the Western Farm Bureau contract. That contract, it will be recalled, contained the explicit requirement that an agent obtain "written approval" before placing policies of insurance with competing companies. Anderson undisputedly violated this requirement. He is poorly situated to make a claim grounded in equity and, in fact, he has not done so.