563 P.2d 54

**ZaRue JACKSON, Plaintiff-Appellant,**

v.

**MINIDOKA IRRIGATION DISTRICT, a Public Corporation of the State of Idaho, et al., Defendants-Respondents.**

No. 11874.

Supreme Court of Idaho.

April 21, 1977.

---

**332**

Donald J. Chisholm, of Goodman, Duff & Chisholm, Rupert, for plaintiff-appellant.

Lawrence H. Duffin, Burley, for defendants-respondents.

McFADDEN, Chief Justice.

This is an appeal from a judgment of dismissal of appellant's amended complaint for failure to state a claim upon which relief can be granted. Appellant sought damages for wrongful discharge, including loss of wages, retirement benefits, vacation time, general damages for injury to reputation, mental and emotional distress and for compensatory general damages. In her original complaint appellant sought a writ of mandate to afford her a hearing before the Board of Directors of the Irrigation District on her discharge. This was granted, following which a hearing was held and appellant was retroactively discharged.

The amended complaint alleges as follows:[1] Appellant, ZaRue Jackson, was employed in August of 1969 as Assistant Secretary of the respondent Minidoka Irrigation District. There was no written contract of employment but the basic terms of employment with the District were a starting salary of $335.00 per month ($536.00 at the time of her dismissal), forty hours per week, and vacation time which accumulated at a rate of one day per month. Respondent participated in the Idaho Public Employees' Retirement System program under which the employee contributes 3% of her pay (this was later increased to 4%) and the employer contributes an additional 6%. (See I.C. § 59–1301, et seq.) The employee's contribution, plus interest, may be withdrawn at such time as she may leave the employment but the employee does not become eligible for any retirement benefits unless she has participated in the program a total of 5 years. I.C. §§ 59–1310, 59–1314.

In October of 1973, while the appellant was thus employed, another employee of the District brought to appellant a $25.00 check made out by a scrap metal dealer and made payable to the District. This employee requested that the District's stamp be placed on the back of the check so it could be cashed. He represented that the check was erroneously made out to the District in that it was the employee's metal which had been sold and that he, therefore, was entitled to the money. Appellant stamped the check and then informed the secretary-treasurer of the district who allegedly agreed to look into it.

As it turned out, this money, and other funds similarly collected by selling what was in fact the District's scrap metal, were put into a Christmas party fund unauthorized by the Board. This practice was discovered by the Board of Directors following an unusually lavish party that year. The Board demanded that all allegedly involved persons, including the appellant, reimburse the District for the money and hand in their resignations. Appellant claims she did not feel she was guilty but, on February 19, 1974, signed the resignation under alleged threats of criminal prosecution of the other involved employees. She subsequently attempted to withdraw her resignation and sought a hearing from the Board.

---

1. Certain of the facts in this opinion do not appear in the record but are taken from the briefs and are undisputed. These facts were apparently presented to the district court at a hearing on the petition for writ of mandate of which we have no record. Other facts are taken from the original complaint.

The Board, however, refused to grant appellant a hearing, claiming she had resigned voluntarily. Appellant then sought a writ of mandate from the district court to compel the Board to afford her a hearing as provided in the Handbook of Information, Policy and Rules of the Minidoka Irrigation District (handbook). The court ordered a show cause hearing to be held on April 29, 1974, and at that hearing the court found that appellant did not resign voluntarily but was under some sort of compulsion. The district court then remanded the matter of the termination of appellant's services to the Board for such further action as it deemed advisable.

On April 30, 1974, the Board held a meeting and concluded that appellant had knowledge of the "Christmas party fund" activities, had failed to report them, and should be dismissed. The Board set a hearing on the matter for May 6. Following this hearing appellant was discharged retroactive to February 19, the date she had signed the resignation.

On September 5, appellant filed an amended complaint for damages for wrongful discharge, including loss of wages from February 19 through the date of normal retirement, loss of retirement benefits, loss of eight and one-half days of accrued vacation time, general damages for injury to reputation, mental and emotional distress and for compensatory general damages. On December 12, the district court dismissed the complaint for failure to state a claim upon which relief could be granted, and the appeal was perfected.

■ The threshold issue presented is whether an employee who has not been hired for a definite period of time may bring a claim against his employer for damages for wrongful discharge. An employee who is hired for an indeterminate period of time is known as an employee at will and it is well established that if he is not hired for some definite period of time he has no right of action upon being discharged. In *Williams v. Kansas City Public Service Co.*, 294 S.W.2d 36 (Mo.1956), the Supreme Court of Missouri enunciated the rule as follows:

"Unless there is a contract pertaining to the duration of the employment or limiting the reasons for which the employee may be discharged the employment is at the will of either party, and the employer may terminate the relationship at any time."

See also: *Underwood v. State*, 214 Kan. 633, 522 P.2d 457 (1974); *Roemer v. Zurich Ins. Co.*, 25 Ill.App.3d 606, 323 N.E.2d 582 (1975); *Densem v. Edmunds*, 272 Or. 345, 537 P.2d 77 (1975); *Horizon v. Weinberg*, 23 Ariz.App. 215, 531 P.2d 1153 (1975); *Consolidated Theatres, Inc. v. Theatrical Stage Emp. Union, Local 16*, 69 Cal.2d 713, 73 Cal.Rptr. 213, 447 P.2d 325 (1968); *Garza v. United Child Care, Inc.*, 88 N.M. 30, 536 P.2d 1086 (N.M.App.1975); *Webster v. Shauble*, 65 Wash.2d 849, 400 P.2d 292 (1965); *Lukens v. Goit*, 430 P.2d 607 (Wyo. 1967).

■ The employment at will rule is not, however, an absolute bar to a claim of wrongful discharge. As a general exception to the rule allowing either the employer or the employee to terminate the employment relationship without cause, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy. The following cases illustrate this exception to the general rule.

In *Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959), the court stated, "[g]enerally, such a relationship is terminable at the will of either party (citations omitted) for any reason whatsoever (citations omitted). However, the right to discharge an employee under such a contract may be limited * * * by considerations of public policy." The court continued, quoting from 72 C.J.S. *Policy* at page 212, to state, "public policy 'is the principles under which freedom of contract or private dealing is restricted by law for the good of the community. Another statement, sometimes referred to as a definition, is that whatever contravenes good morals or any established interests of society is against public policy.'" In *Petermann*, the plaintiff/employee had been sub-

poenaed to testify before the California Legislature and was instructed by his employer to give false testimony. He was fired for answering truthfully. In reversing a judgment on the pleadings for the defendant, the court stated that coercing perjury is "patently contrary to the public welfare."

In *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), the plaintiff was fired for reporting an injury to her arm in order to file for workmen's compensation. The court held that such an act was in clear contravention of public policy and that the plaintiff had stated a claim upon which relief could be granted.

In *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974), the plaintiff claimed she was harassed by her foreman because she refused to go out with him and that his hostility, condoned if not shared, by the defendant/employer's personnel manager, ultimately resulted in her being fired. The court said, "We hold that a termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract."

In *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975), the court concluded, "there can be circumstances in which an employer discharges an employee for such a socially undesirable motive that the employer must respond in damages for any injury done." The court held that the plaintiff should be awarded compensatory damages for being fired because she served on jury duty against the wishes of her employer.

■ Since there is no indication of any motivational infringement upon public policy, and since this contract was one of employment at will, appellant cannot maintain her claim of wrongful discharge. To this extent the complaint was properly dismissed by the district court.

Appellant maintains, however, that since the Board had previously determined at the April 30 meeting that she should be discharged, the hearing on May 6 was meaningless. However, while this may be true, it does not provide appellant with a ground for relief. As stated, an employee at will may be discharged without cause and has no right to a hearing on the matter. Here, however, a hearing is provided as a matter of contract (the handbook). As such, the parameters of the hearing are also defined by the contract.

The district handbook provides as follows:

"Any employee dismissed by the Manager may, within 30 days, ask the Chairman of the Board, in writing, for a hearing before the Board of Directors and the Manager and his supervisor to review the dismissal. Said hearing to be completed prior to 30 days after the Chairman receives the request."

■ The handbook only provides for a hearing before the Board when an employee has been discharged by the *manager.* The purpose behind this section seems clear, for it confirms the authority of the Board to supervise actions of the manager and prevents him from arbitrarily firing otherwise valuable employees for personal reasons. The handbook does not, however, provide for a hearing when an employee is discharged directly by the Board, as is the case here. Appellant, therefore, was not even entitled to the hearing which was held and cannot now be heard to complain that it was not adequate.[2]

Appellant also maintains that even though, subsequent to the May 6 hearing, she was discharged retroactive to February 19, she was not in fact terminated until May 6 and should have been paid her full salary up to that date.

■ The fact of discharge, however, does not depend upon the use of formal words of firing. The test is whether suffi-

---

**2.** The handbook does state that the Board of Directors is required to sit as a Board of Review, if properly requested, for any dismissed employee. However, the handbook only provides for a hearing before the Board when the employee is dismissed by the manager.

cient words or actions by the employer would logically lead a prudent man to believe his tenure had been terminated. *Hannifin v. Retail Clerks International Ass'n, 162 Mont. 170, 511 P.2d 982 (1973); Colorado Civil Rights Comm'n v. State School Dist. No. 1,* 30 Colo.App. 10, 488 P.2d 83 (1971). Employees are often asked to resign as opposed to being fired. While this may be done for any number of reasons, the meaning is clear that the employee is being dismissed. There could have been little doubt in appellant's mind that she was in effect being fired when she signed her resignation and the fact that the resignation was later found to have been coerced does not alter the character of her termination. Her claim that she was not dismissed until May 6 and should have been paid up to that date was properly dismissed.

Appellant also claims she should be entitled to recover for the loss of retirement benefits caused by her termination. At the time appellant was discharged, effective February 19, she was allegedly 17 months short of serving the five years necessary to be eligible for retirement benefits. She was paid her entitlement but no more. She now maintains that retirement benefits are in fact compensation for services rendered, that her loss of retirement benefits thus results in a loss of compensation for services she has already performed and that the loss of these benefits was not contemplated by her when she accepted employment with respondent.

■ It is true that employer contributory retirement benefits constitute deferred compensation to the employee. *Hanson v. City of Idaho Falls,* 92 Idaho 512, 446 P.2d 634 (1968); *Jacoby v. Grays Harbor Chair and Mfg. Co.,* 77 Wash.2d 911, 468 P.2d 666 (1970). The pension plan becomes part of the contract of employment and contractual rights to the retirement benefits can thus be created between an employer and his employees. *Muggill v. Reuben H. Donnel-*

*ley Corp.,* 62 Cal.2d 239, 42 Cal.Rptr. 107, 398 P.2d 147 (1965); *Taylor v. Multnomah County Deputy Sheriff's Retirement Board,* 265 Or. 445, 510 P.2d 339 (1973). The contractual right is vested in the employee subject, however, to reasonable contingencies such as continued employment, which are necessary to keep the pension system flexible and maintain its integrity. *Hanson v. City of Idaho Falls, supra.*

■ Under the provisions of the Idaho Public Employee's Retirement System, a participant in the program is not eligible for retirement benefits unless she has accumulated five years of membership service. I.C. § 59–1310. Since appellant has not complied with this contingency, she has stated no claim to retirement benefits.[3]

■ Finally, appellant also seeks as damages compensation for the loss of eight and one-half days of accrued vacation time. Vacation pay may be a matter of contract between the employer and the employee. *Wheeler v. Mission Electric & Plumbing Supply, Inc.,* 267 Or. 209, 515 P.2d 1323 (1973). As with the pension plan, the provisions in the District's handbook relating to vacation time become part of the employment contract. The handbook provides that following the 13th month of employment vacation time shall be earned at the rate of one day per month, that vacation time shall not accumulate beyond a total of 12 days and that unused vacation time shall be paid upon the termination of employment.

At the end of calendar year 1973, appellant had accumulated twelve days of vacation. At that time she was apparently informed by the manager of the District that she would be allowed to carry the accrued vacation time over into 1974 if she would work the entire month of December. Following the May 6 hearing, appellant was compensated for five and one-half days of vacation time.

3. It should be noted that appellant has not irretrievably "lost" these retirement benefits. If she secures employment with another participant in the Public Employees Retirement Sys-

tem and works for over 17 months, she would then have accumulated five years of credited service and would be entitled to receive the appropriate retirement benefits.

■ Since, at the time of her discharge, February 19, 1974, appellant had apparently accrued more than five and one half days of vacation time, her allegation that she was compensated for only five and one half of those days sufficiently states a claim of relief for breach of the employment contract. See *Wackerli v. Martindale,* 82 Idaho 400, 353 P.2d 782 (1960); *Williams v. Williams,* 82 Idaho 451, 354 P.2d 747 (1960); *Hadfield v. State ex rel. Burns,* 86 Idaho 561, 388 P.2d 1018 (1964).

The order of the district court is therefore reversed with respect to the claim for accrued vacation pay and affirmed on all other grounds. The case is remanded for further proceedings in accordance with this opinion. No costs allowed.

DONALDSON, SHEPARD, BAKES and BISTLINE, JJ., concur.