778 P.2d 744

**Armida METCALF, Plaintiff-appellant,**

v.

**INTERMOUNTAIN GAS COMPANY, Defendant-respondent.**

No. 17369.

Supreme Court of Idaho.

Aug. 8, 1989.

Skinner, Fawcett & Mauk, Boise, Idaho, for plaintiff-appellant. William L. Mauk argued.

Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, for defendant-respondent. Phillip S. Oberrecht argued.

BAKES, Justice.

Plaintiff, Armida Metcalf, appeals the district court's decision granting partial summary judgment for her former employer, defendant Intermountain Gas Company (Intermountain), on two of her five causes of action: *i.e.*, breach of the employment contract, and breach of a covenant of good faith and fair dealing. The trial court denied Intermountain's motion for summary judgment on the three other causes of action: sex discrimination, age discrimination and breach of public policy, each of which is still pending and awaiting trial. On appeal we consider only the dismissal of the claims for (1) breach of employment contract and (2) breach of an implied covenant of good faith and fair dealing.[1] We reverse.

## I

Metcalf began working for Intermountain in 1979. She performed clerical duties in Intermountain's Hailey, Idaho, office which consisted of seven employees. While on full time status, Metcalf incurred some illness which required her to take sick leave. Under the Intermountain policy an employee could accrue sick leave at a rate of one day per month. Although her illnesses did not exhaust all of her accrued sick leave, Metcalf was absent for eight weeks in 1984 and 1985. During this time, Metcalf underwent a hysterectomy and a thyroidectomy. However, the amount of sick leave which Metcalf took did exceed the company average for that time, as it did for fellow Hailey full time office clerk Betty Munster. According to the manager of the Hailey office, the absences of Metcalf and Munster, the only office clerks, created serious work problems for that office.

In June, 1986, Intermountain hired a part time clerk to replace Munster who retired. This clerk was elevated to full time status in August; in September Metcalf's status was changed from full to part time, in part allegedly because of her sick leave history.

In January, 1986, Metcalf filed discrimination charges against Intermountain with the Idaho Human Rights Commission, alleging age and sex discrimination. Shortly thereafter, her hours were further reduced to two hours per day. In September, 1986, Metcalf voluntarily resigned to pursue other full time employment. The issue on appeal is whether the trial court properly granted summary judgment against Metcalf on the two counts in Metcalf's complaint alleging (1) breach of employment contract, and (2) breach of covenant of good faith and fair dealing.

## II

Regarding the breach of employment contract claim, Metcalf argues that the em-

---

1. The partial summary judgment dismissing these two claims was certified as final under I.R.C.P. 54(b). Therefore, we do not address questions raised by appellant on her breach of public policy claim, as that cause of action was not resolved by the trial court and is still pending. Metcalf also sued Intermountain in federal court. That court dismissed all pendent state claims. Metcalf's federal suit consists now of discrimination claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. A stay on those proceedings has been issued by the federal court.

ployment-at-will doctrine, which Metcalf acknowledges has been adopted and approved by this Court in innumerable decisions, has been modified in this case either by an express agreement or by an implied-in-fact agreement. As a result, Metcalf alleges that she could not be discharged, nor could her full time employment status be withdrawn, merely because she used a substantial portion of the sick leave she had accumulated pursuant to the employment contract. Intermountain, on the other hand, disputes this contention and asserts that there is no evidence in the record, and, particularly, nothing in the Personnel Manual and Employee Handbook which expressly or even impliedly limits Intermountain's right to discharge Metcalf or to reduce her working hours. The district court agreed with Intermountain and found that "the sick leave policy of the defendant [did] not reach that level of specificity required to constitute an offer for contract, limiting the reason for which the plaintiff could be discharged." [2]

We agree with the district court that there is no substantial evidence of an express contract provision precluding the employer from dismissing Metcalf "at will." However, viewing the entire record, including the Personnel Manual and Employee Handbook, we conclude that there is a triable issue of fact regarding whether there was an implied-in-fact contractual agreement that Metcalf's employment would not be terminated or reduced because of her using the accumulated sick leave which both parties agree was part of the oral employment contract.

■ As the result of numerous decisions of this Court in recent years, it is now settled law in this state that:

Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability. *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977).

*Spero v. Lockwood, Inc.*, 111 Idaho at 75, 721 P.2d at 175 (1986). Thus, in the absence of an agreement between the employer and the employee limiting the employer's (or the employee's) right to terminate the contract at will, either party to the employment agreement may terminate the relationship at any time or for any reason without incurring liability. *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985). However, such a limitation on the right of the employer (or the employee) to terminate the employment relationship "can be express or implied." *Harkness v. City of Burley*, 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986). A limitation may be implied if, from all the circumstances surrounding the employment relationship, a reasonable person could conclude that both parties intended that the employer's (or the employee's) right to terminate the employment relationship-at-will had been limited by the implied-in-fact agreement of the parties. *See, e.g., Spero v. Lockwood, Inc.*, 111 Idaho 74, 721 P.2d 174 (1986); *Wagenseller v. Scottsdale Mem. Hospital*, 147 Ariz. 370, 710 P.2d 1025, 1036 (Ariz.1985) (*en banc*) ("An implied-in-fact contract term ... is one that is inferred from the statements or conduct of the parties."); 1 A.Corbin, § 17, at 38 (1960).

**2.** Intermountain, in its brief on appeal, asserts that the district court's decision is supported by a "long line of [Idaho] cases which continues to grow, uphold[ing] the traditional rule that an employee-at-will can be discharged at any time and for any reason, except those violative of strong public policy. *See, Jones v. EG & G Idaho, Inc.*, 111 Idaho 591, 726 P.2d 703 (1986); *Spero v. Lockwood, Inc.*, 111 Idaho 74, 721 P.2d 174 (1986); *Watson v. Idaho Falls Consolidated Hospitals, Inc.*, 111 Idaho 44, 720 P.2d 632

(1986); *Harkness v. City of Burley*, 110 Idaho 353, 715 P.2d 1283 (1986); *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (1977); *Holmes v. Union Oil Co. of California*, 114 Idaho 773, 760 P.2d 1189 (Ct.App.1988); *Arnold v. Diet Center, Inc.*, 113 Idaho 581, 746 P.2d 1040 (Ct.App. 1987); and *Staggie v. Idaho Falls Consolidated Hospitals, Inc.*, 110 Idaho 349, 715 P.2d 1019 (Ct.App.1986)."

■ This Court has recognized that "[a]n employee's handbook can constitute an element of the contract." *Harkness v. City of Burley*, 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986); *Johnson v. Allied Stores Corp.*, 106 Idaho 363, 679 P.2d 640 (1984). Unless an employee handbook specifically negates any intention on the part of the employer to have it become a part of the employment contract, a court may conclude from a review of the employee handbook that a question of fact is created regarding whether the handbook was intended by the parties to impliedly express a term of the employment agreement. *Spero v. Lockwood, supra; Harkness v. City of Burley, supra; Johnson v. Allied Stores Corp., supra; Wagenseller v. Scottsdale Mem. Hospital, supra.*

■ In the present case the employee handbook was silent on the question of whether the terms and employee benefits set out in the handbook affected or otherwise modified the employer's right to terminate the employment relationship at will.[3] Accordingly, we conclude, after considering all the circumstances of this case, that a material issue of fact exists regarding whether, by providing for accumulated sick leave benefits, the employer impliedly agreed with the employee that the employment relationship would not be terminated or the employee penalized for using the sick leave benefits which the employee had accrued. "The trier of fact must determine whether 'a contract existed between the parties by virtue of the ... policy manual.'" *Harkness v. City of Burley*, 110 Idaho at 356, 715 P.2d at 1286.

Accordingly, the partial summary judgment on Metcalf's breach of contract cause of action is reversed, and that cause remanded for trial.

### III

Metcalf also appeals from the trial court's granting of partial summary judgment on her cause of action which alleges that "[i]mplicit in [the parties' employment contract] was a covenant of good faith and fair dealing which governed the circumstances and manner of terminating [her] full time employment." Metcalf asserts essentially that there is an implied-in-law (as distinguished from an implied-in-fact) covenant of good faith and fair dealing in every employment contract. Metcalf makes no specific factual allegations which would support a finding that the parties' agreement contained such a covenant of good faith and fair dealing. Rather, she asserts that the law should imply such a covenant in all employment contracts, or at least in this employment contract.

Until today, this Court has not recognized an implied-in-law covenant of good faith and fair dealing in employment contracts. In *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 701 P.2d 208 (1985), this Court unanimously stated:

The rule in Idaho, as in most states, is that unless an employee is hired pursuant to a contract which specifies the duration of the employment, or limits the reasons for which the employee may be discharged, the employment is at the will of either party, and the employer may terminate the relationship at any time for any reason without incurring liability. *See Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977) and the cases cited therein. *The only general exception to the above rule is that an employer may be liable for wrongful discharge when the motivation for discharge contravenes public policy. Jackson, supra.*

108 Idaho at 589, 701 P.2d at 209 (emphasis added). In *Anderson v. Farm Bureau Mutual Ins. Co. of Idaho*, 112 Idaho 461, 732 P.2d 699 (Ct.App.1987), the Court of Appeals, quoting from our earlier decision in *MacNeil v. Minidoka Memorial Hospi-*

---

**3.** Subsequent to the employee's termination in this case, the employee handbook was modified to provide:

This handbook is not a contract and cannot create a contract. As an employee of IGC, you should understand that employment is "at will." That means that employment can be terminated at any time by either you or the company, with or without cause and with or without notice.

*tal*, 108 Idaho 588, 701 P.2d 208 (1985), recognized that:

> The only general exception to this rule [employment-at-will doctrine] *is that an employer may be liable if the discharge is for a reason contravening public policy.*

112 Idaho at 469, 732 P.2d at 707 (emphasis added).

Recently, in *Clement v. Farmers Insurance Exchange*, 115 Idaho 298, 766 P.2d 768 (1988), a case involving a principal-agent (independent contractor) relationship, appellants had argued "that an implied covenant of good faith and fair dealing so requires the invalidating of an express termination provision of a written contract." The Court responded, "We decline to so hold," stating:

> We hold that the express written contract term authorizing the termination upon 90–days notice is not overridden by an implied covenant of good faith and fair dealing which would supplant the express language of the contract and permit termination only upon good cause.

115 Idaho at 300, 766 P.2d at 770.

■ Nevertheless, it is the opinion of this Court today that in employer-employee relationships (as distinguished from principal-agent (independent contractor) relationships, *Clement v. Farmers Insurance Exchange, supra*) we should adopt an implied-in-law covenant of good faith and fair dealing (the covenant) as hereinafter outlined. In changing this Court's prior course, it is important to explain what the covenant which we adopt is. For guidance we turn to the rationale of some of our adopting sister states. Recognizing that we are joining the minority view in this country, we further acknowledge the concerns expressed by courts which have rejected the covenant out of concern that it would place undue restrictions on management and would infringe on the employer's legitimate exercise of management discretion.

First, the covenant is implied in *contracts.* A breach of the covenant is a breach of the employment contract, and is not a tort. The potential recovery results in contract damages, not tort damages. *See, Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) (*en banc*); *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (Ariz.1985) (*en banc*). In *Wagenseller*, the Arizona Supreme Court, while adopting the implied covenant, rejected a rule which would allow tort damages. Referring to an earlier decision in California which allowed for such recovery (later rejected in *Foley v. Interactive Data Corp., supra*), the Arizona court wrote:

> We find neither the logic of the California cases nor their factual circumstances compelling for recognition of so broad a rule in the case before us. Were we to adopt such a rule (tort damages), we fear that we would tread perilously close to abolishing completely the at-will doctrine and establishing by judicial fiat the benefits which employees can and should get *only* through collective bargaining agreements or tenure provisions.

710 P.2d at 1040 (emphasis in original).

The California Supreme Court recently has also rejected the rule that a breach of the implied covenant of good faith and fair dealing is a tort, permitting tort damages. The California Courts of Appeals had adopted such a tort approach commencing with the case of *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal. Rptr. 722 (1980). However, in *Foley*, the California Supreme Court rejected the doctrine in which a breach of the implied covenant of good faith and fair dealing is a tort. After noting that "[t]he covenant of good faith and fair dealing was developed in the contract arena and is aimed at making effective the agreement's promises," the court in *Foley* observed that "the clear majority of jurisdictions have either expressly rejected the notion of tort damages for breach of the implied covenant in employment cases or impliedly done so by rejecting any application of the covenant in such a context." 254 Cal.Rptr. at 227, 229, 765 P.2d at 389, 391. The court in *Foley* then reversed the earlier decisions of the California Courts of Appeals and held that a breach of the covenant of good faith and

fair dealing is a breach of contract compensable only by contract damages, not tort damages. We agree with the analysis and conclusions of both the California and Arizona courts and conclude that the covenant is implied in contracts, and breach of the covenant is the breach of the contract, not a tort.

Second, we hold that the covenant protects the parties' benefits in their employment contract or relationship, and that any action which violates, nullifies or significantly impairs any benefit or right which either party has in the employment contract, whether express or implied, is a violation of the covenant which we adopt today. When the Arizona Supreme Court adopted the implied covenant of good faith in the *Wagenseller* case, it carefully considered the concerns of those courts which have rejected the covenant and wrote:

> [T]he implied-in-law covenant of good faith and fair dealing protects the right of the parties to an agreement to receive the benefits of the agreement that they have entered into. *The denial of a party's right to those benefits, whatever they are, will breach the duty of good faith implicit in the contract.* ...
>
> We ... recognize an implied covenant of good faith and fair dealing in the employment-at-will contract, although that covenant does not create a duty for the employer to terminate the employee only for good cause. The covenant does not protect the employee from a "no cause" termination because tenure was never a benefit inherent in the at-will agreement. *The covenant does protect an employee from a discharge based on an employer's desire to avoid the payment of benefits already earned by the employee,* such as the sales commissions in *Fortune* [*v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977)], but not the tenure to earn the pension and retirement benefits in *Cleary* [*v. American Airlines,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980)].....
>
> ... [B]ecause we are concerned not to place undue restrictions on the employer's discretion in managing his work force and because tenure is contrary to

the bargain in an at-will contract, we reject the argument that a no cause termination breaches the implied covenant of good faith and fair dealing in an employment-at-will relationship.

710 P.2d at 1040–1041 (emphasis added).

We agree with the foregoing standard and analysis of the Arizona Supreme Court in *Wagenseller,* and adopt the implied-in-law covenant of good faith and fair dealing in employment contracts as set out above. Any action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant. However, we reject the "amorphous concept of bad faith" as the standard for determining whether the covenant has been breached. *See, Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1086 (1984) (*en banc*); *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834, 838 (1983). As those and other courts have pointed out, it is difficult to distinguish a "bad faith" discharge from a no-cause discharge (which is permitted under the at-will doctrine) or a discharge in violation of public policy (which is not permitted under the at-will doctrine). *MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irr. Dist.,* 98 Idaho 330, 563 P.2d 54 (1977). The California Supreme Court, in *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) (*en banc*), observed that simply interjecting a requirement of "bad faith" does nothing to determine those cases in which damages should be awarded. "Virtually any firing (indeed any breach of a contract term in any context) could provide the basis for a pleading alleging the discharge was in bad faith under the cited standards." 254 Cal.Rptr. at 239, 765 P.2d at 401. Furthermore, a bad faith standard would require a judicial inquiry into the subjective intentions of the party who is alleged to have violated the covenant. As the court stated in *Foley,* "Resolution of the ensuing inquiry into the employer's motives has been difficult to predict and demonstrates the imprecision of the standards thus far formulated."

254 Cal.Rptr. at 238, 765 P.2d at 400. Accordingly, without tying the violation of the covenant to the "amorphous concept of bad faith," we conclude that any action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant of good faith and fair dealing which we adopt today. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (Ariz.1985); *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988).

We recognize that our decision today is a departure from long established principles of contract law. As the California court in *Foley* noted:

> Significant policy judgments affecting social policies and commercial relationships are implicated in the resolution of this question in the employment termination context. Such a determination which has the potential to alter profoundly the nature of employment, the cost of products and services, and the availability of jobs, arguably is better suited for legislative decisionmaking.

254 Cal.Rptr. at 235, 765 P.2d at 397. While we have not gone as far in interpreting this implied covenant as a small minority of courts have, *see Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974); *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), we recognize that our decision today is a departure from prior law. Accordingly, it will only be applied prospectively to breaches or violations of the covenant occurring after the effective date of this opinion, and to the claims in this case. *Smith v. State,* 93 Idaho 795, 473 P.2d 937 (1970). The summary judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs to appellant. No attorney fees awarded.

JOHNSON, J., concurs. HUNTLEY, J., concurs in the result.

SHEPARD, J., sat, but did not participate due to his untimely death.

HUNTLEY, Justice, concurring.

I concur in Part I and concur in the result in Parts II and III of the majority opinion. I will discuss Part III first and Part II next. Additionally, I will comment upon a problem I see in the trial court's treatment of the "public policy" claim for relief.

### I.

As to Part III of the majority opinion, I fully concur that on the facts before the court, Idaho should and does recognize "an implied-at-law covenant of good faith and fair dealing in employment contracts" and, therefore, I concur in the result that the summary judgment must be reversed and the case remanded for further proceedings.

I do have several concerns with the analysis. First, the opinion rejects the "bad faith" standard and purports to enunciate a standard which on analysis is no standard or guiding star at all, the opinion stating at page 628, 778 P.2d at 750:

> Accordingly, without tying the violation of the covenant to the "amorphous concept of bad faith," we conclude that any action by either party which violates, nullifies or significantly impairs any benefit of the employment contract, is a violation of the implied-in-law covenant of good faith and fair dealing which we adopt today. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (Ariz.1985); *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988).

Such is far too liberal and loose a standard for me. My analysis would be as follows:

### Breach of a Covenant of Good Faith and Fair Dealing

Count Four of the Complaint asserts that there existed a covenant of good faith and fair dealing which may be implied in Metcalf's contract of employment with IGC, and which was breached in IGC's bad faith demotion and forced termination of Metcalf. Relying upon the Idaho Court of Appeals' decision in *Holmes v. Union Oil Co. of California, Inc.,* 114 Idaho 773, 760 P.2d 1189 (1988), in which the Court of

Appeals refused to adopt the covenant of good faith and fair dealing in employment discharge cases, the district court dismissed this count.

Idaho has not yet had a case squarely ruling on whether there exists a covenant of good faith and fair dealing in the employment context. However, numerous other jurisdictions have recognized this cause of action. See, e.g. *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974), but compare, *Howard v. Dorr Woolen Co.*, 120 N.H. 295, 414 A.2d 1273 (1980) and *Cloutier v. Great Atlantic & Pacific Tea Co.*, 121 N.H. 915, 436 A.2d 1140 (1981); see also, *Fortune v. Nat'l Cash Register*, 373 Mass. 96, 364 N.E.2d 1251 (1977); *Cleary v. American Airlines*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980); *Pugh v. See's Candies*, 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981) modified on other grounds, 117 Cal.App.3d 520A (1981); *Gates v. Life of Montana Ins. Co.*, 196 Mont. 178, 638 P.2d 1063, 1067 (1982); *Flanigan v. Prudential Federal Savings & Loan Assoc.*, 221 Mont. 419, 720 P.2d 257 (1986); *Mitford v. de Lasala*, 666 P.2d 1000 (Alaska 1983); *Wagenseller v. Scottsdale Mem. Hospital*, 147 Ariz. 370, 710 P.2d 1025 (Ariz.1985).

Instructive are the Idaho decisions of *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014, 1017 (1986), recognizing the covenant in insurance contracts, *Luzar v. Western Surety Co.*, 107 Idaho 693, 692 P.2d 337, 340 (1984), holding "good faith and fair dealing are implied obligations of every contract." *Jackson v. Minidoka Irrigation Dist.*, citing *Monge* with approval; and *Rosecrans v. Intermountain Soap Co.*, 100 Idaho 785, 605 P.2d 963 (1980) imposing a "good faith" requirement on discharge of an employee pursuant to a contract for a definite term.

Some courts have rejected the cause of action for breach of the covenant of good faith and fair dealing because of an inability to distinguish it from the principal that

"good cause" is not necessary to discharge an "at will" employee. The review of the authorities which follow demonstrates that the covenant of good faith and fair dealing and the principle that employment contracts are "at will" may happily co-exist.

## A.

### Good Faith and Public Policy

"... [w]hatever contravenes good morals or any established interests of society is against public policy." *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977).

*Jackson* cites various case law examples of terminations at will that contravene public policy: *Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (employee fired for refusing to give false testimony before the California Legislature); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973) (plaintiff fired for reporting an injury in order to collect worker's compensation); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (employee discharged for serving jury duty against her employer's wishes); and, *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974) (married employee harassed and eventually fired for refusing to go out with her foreman).[4]

In *Jackson*, we quoted with approval the following from *Monge:*

> We hold that a termination by the employer of a contract of employment at will which is motivated by *bad faith* or *malice* or based on *retaliation* is *not the best interest of the economic system or the public good* and constitutes a breach of the employment contract. (Emphasis added.)

*Id.*, 98 Idaho at 334, 563 P.2d at 58. Further, in *Jackson, supra* we recognized the following public policy considerations:

**4.** The New Hampshire Court later construed *Monge,* as applying "only to a situation where an employee is discharged because he performed an act that public policy would encourage, or refused to do that which public policy

would condemn." *Howard v. Dorr Woolen, Co.*, 120 N.H. 295, 414 A.2d 1273, 1274 (1980). Our reliance on the analysis in *Monge* is in no fashion fettered by the New Hampshire Court's subsequent narrowing of its own rule.

In *Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959), the court stated [g]enerally, such a relationship is terminable at the will of either party (citations omitted) for any reason whatsoever (citations omitted). However, the right to discharge an employee under such a contract may be limited * * * by considerations of public policy. The court continued, quoting from 72 C.J.S. *Policy* at page 212, to state, public policy "is the principles under which freedom of contract of private dealing is restricted by law for the good of the community. Another statements, sometimes referred to as a definition, is that whatever contravenes *good morals* or any established interests of society is against public policy.

Using the *Jackson* definition of public policy, a bad faith termination certainly "contravenes good morals or any established interests of society." Further, employer bad faith or retaliation is not in "the best interest of the economic system or the public good." Employees and agents are not grist for business mills. As discussed below, the requirements of good faith and fair dealing are not new ideas either to contract or agency law. Every contract of employment is imbued with a covenant requiring the parties to deal with one another in an atmosphere of good faith and fair dealing. In other words, the parties must not act in bad faith.

A distinction frequently is made between the bad faith and public policy exceptions to termination of employment at will.[5] In fact, some courts have been criticized for "blurring the distinction" between the bad faith and public policy exceptions.[6] However, based upon the above analysis of *Jackson*, I find no merit in a hairsplitting distinction between the bad faith and public

policy exceptions in employment at will terminations.

## B.

## Good Faith and Good Cause

The concept of "good faith" has little if anything to do with the concept of "good cause." "Good cause" termination issues cannot arise when the employment contract is "at will." Where good cause is required, the employer must show that the employee did something wrong that justified the termination. When the contract is "at will," the employer need not show good cause for the termination. However, the "at will" employer may not terminate an employee for bad causes or reasons, i.e., those contrary to public policy, because such terminations are made in bad faith, and as such, are in contravention of the implied covenant of good faith and fair dealing. An employee may be considered "at will" under the good faith theory, insofar as there need not be proof of cause or notice prior to the personnel action, and still be entitled to sue for a "bad faith" breach of the employment relationship. "Good faith" involves a limitation of the employer's seemingly (assumed) absolute discretion.

*Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (Ariz.1985), details the scope of the covenant of good faith and fair dealing:

The covenant requires that neither party do anything that will injure the right of the other to receive the benefits of their agreement. *Comunale v. Traders General Insurance Co.*, 50 Cal.2d 654, 658, 328 P.2d 198, 200 (1958); *Fortune v. National Cash Register Co.*, 373 Mass 96, 104, 364 N.E.2d 1251, 1257 (1977).

In recognizing the implied covenant of good faith and fair dealing, but refusing to

---

5. A growing number of jurisdictions are beginning to recognize bad faith exceptions to employment contracts terminable at will. For a selection representative of this concept, *see: Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781 (1984); *Siles v. Travenol Laboratories, Inc.*, 13 Mass.App. 354, 433 N.E.2d 103 (1982); *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980); *Sa-*

*vodnik v. Korvettes, Inc.*, 488 F.Supp. 822 (E.D. N.Y.1980); and *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977).

6. Larson, Why We Should Not Abandon the Presumption that Employment is Terminable At Will, 23 Idaho L.Rev. 219, 243 (1986–87).

equate "good faith" with "good cause," the Court stated:

> We do, however, recognize an implied covenant of good faith and fair dealing in the employment-at-will contract, although that covenant does not create a duty for the employer to terminate the employee only for good cause. The covenant does not protect the employee from a "no cause" termination because tenure was never a benefit inherent in the at will agreement. The covenant does protect an employee from a discharge based on an employer's desire to avoid the payment of benefits already earned by the employee.... To the extent however that the benefits represent a claim for prospective employment, her [the plaintiff] claim must fail. The terminable-at-will contract between her and the Hospital made no promise of continued employment. To the contrary, it was, by its nature, subject to termination by either party at any time, subject only to the legal prohibition that she could not be fired for reasons which contravene public policy.
>
> Thus, because we are concerned not to place undue restrictions on the employer's discretion in managing his work force and because tenure is contrary to the bargain in an at-will contract, we reject the argument that a no cause termination breaches the implied covenant of good faith and fair dealing in an employment-at-will relationship. (*Emphasis added.*)

*Wagenseller*, 710 P.2d 1025, 1040–41. The concept of the implied covenant of good faith and fair dealing, as explained by *Wagenseller* requires that "neither party do anything that will injure the rights of the other to receive the benefits of their agreement."

## C.

### The Covenant Applied

In this case, if there was a contract between Armida Metcalf and the Intermountain Gas co., one of the elements may have been to provide the benefit of generous sick leave, without fear of reprisal or detriment to employees who avail themselves of that benefit offering. The conduct of IGC in penalizing Armida Metcalf for becoming sick, and thereby utilizing the sick leave benefits which she had accrued through her labors and service, may, therefore, have constituted a breach of the duty which IGC owed fairly and in good faith to Metcalf. On the record in this case, the dismissal of the cause of action for breach of the implied covenant of good faith and fair dealing must be reversed because a jury question is presented as to whether the covenant was breached.

## II.

Secondly, I concur in the majority's ruling in Part II that the dismissal of the contract claim for relief must be reversed.

The majority opinion and the district court opinion both seem to be confused as to what the requirements for an express contract are, they seeming, as I read them, to believe that if a contract is part oral and part policy manual, it is an implied contract rather than an express contract. Thus, the majority states at page 624, 778 P.2d at 746:

> We agree with the district court that there is no substantial evidence of an express contract provision precluding the employer from dismissing Metcalf "at will." However, viewing the entire record, including the Personnel Manual and Employee Handbook, we conclude that there is a triable issue of fact over whether or not there was an implied-in-fact contractual agreement that Metcalf's employment would not be terminated or reduced because of her using the accumulated sick leave which both parties agree was part of the oral employment contract.

It seems to me that if employer states "I offer employment as per this manual" and employee says "I accept," the parties have an express contract. The issue then becomes one of interpreting the contract rather than a word game as to whether it is express or implied. I would treat this issue in the following manner:

### Personnel Policies and Manuals and Employee Handbooks as Contracts

For over a decade, it has been the recognized law in this jurisdiction that personnel policies and employee handbooks, and the statements and promises contained therein can have contractual status. *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 334, 563 P.2d 54 (1977).

When the existence of a contract is in issue, and the evidence is conflicting or admits to more than one inference, it is for the trier of fact to decide whether a contract in fact exists. *Johnson v. Allied Stores Corp.*, 106 Idaho 363, 679 P.2d 640 (1984); *Harkness v. City of Burley*, 110 Idaho 353, 359, 715 P.2d 1283 (1986). The *Johnson* court stated:

> When the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists. [Citations omitted.] This Court has stated that "[g]enerally the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of facts.

*Johnson, supra,* 106 Idaho at 368, 679 P.2d 640.

IGC's argument on this point can be *paraphrased* as follows:

> District judges must make the initial determination of whether, as a matter of law, the jury can entertain the question of whether the personnel manual or handbook can constitute a contract. Underlying this approach is the presumption that all employment contracts are "at will." This presumption can only be overcome if the employee can show that he or she was wrongfully discharged without "just cause," which IGC argues can only be proven if the employment manual or handbook specifically contains an exhaustive list limiting the reasons for which an employee can be discharged. IGC argues that without such specific limits, it is assumed that employee discharges are discretionary and "at will" and, thus, the employer's personnel policy handbook or employee manual cannot achieve contractual status. (End paraphrase.)

IGC's argument is facially circular. Metcalf concedes that the "employment at will doctrine" has been adopted in Idaho, but disagrees as to what is required to modify an employee's presumed "at will" status.[7] Metcalf asserts that if personnel policies or manuals or employee handbooks contain provisions which are presented with the expectation that the employees will rely on them as limiting the reasons for which an employee can be discharged, then those terms constitute an express or implied contract which binds the employer to the express or implied limitations on reasons for discharge. The list need not be exhaustive. And the initial determination of whether a contract exists is for the jury to determine.

Distilled to its essence the question before us is whether a contract is presumed "at will" unless the reasons for discharge are specifically and exhaustively limited or enumerated, or whether the terms of a personnel manual or handbook, presented with the expectation that the employee will rely on them, creates a question for the jury as to whether the document is binding on the employer.

If there is evidence that the policy manual or handbook was presented with the expectation that the employee will rely on it, and that the employee reasonably relied thereon, then there is a question of fact for the jury. To say that the reasons which constitute "good cause" must be exhaustive before a contract exists is analogous to stating that in a commercial contract the parties must list all the conceivable reasons for nonperformance and if the list is not "all inclusive" then either party may ex-

---

7. Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability. *MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977). *Spero v. Lockwood, Inc.,* 111 Idaho at 75, 721 P.2d at 175 (1986).

cuse nonperformance by saying "there was no agreement."

A leading case in this area of employment law is *Toussaint v. Blue Cross and Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880, 892 (1980). The following excerpt which explains the standard for determining whether personnel manuals, etc., may constitute a contract articulates the approach urged by Metcalf:

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."

See *Spero v. Lockwood Inc.*, 111 Idaho 74, 77, 721 P.2d 174, 177–78, (Bistline, J. dissent quoting *Toussaint v. Blue Cross and Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880, 892 (1980). In *Johnson v. Allied Stores, supra*, this court ruled that the existence of a contract with respect to benefits conferred to the employee was "for the jury to decide." The court did not say that it must be shown that the employer's personnel policies provided an exhaustive list of the reasons for discharge before a contract pertaining to benefits can be said to exist.

In *Holmes v. Union Oil Company*, 114 Idaho 773, 760 P.2d 1189 (1988), the Idaho Court of Appeals quoted with approval from a decision of the Alabama Supreme Court, on the elements of proof required for giving the employer's personnel policy statements significance:

> The Alabama Supreme Court recently has articulated the legal test for determining whether the terms of an employer's manual are sufficient to create a contract. First, the language contained in the manual must be specific enough to constitute an offer. Second, the offer must be communicated to the employee by the issuance of the manual or otherwise. Third, the employee must accept the offer by retaining employment after generally becoming aware of the offer. His actual performance supplies the necessary consideration.

*Hoffman La Roche, Inc. v. Campbell*, 512 So.2d 725 (Ala.1987). This language clearly supports Metcalf's expectation and reliance analysis rather than IGC's exhaustive list analysis.

Finally, it should be noted that a limitation on the employer's (or employee's) right to terminate employment "can be express or implied." *Harkness v. City of Burley*, 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986). Contracts may be partly express and partly implied in fact. John D. Calamari & Joseph M. Perrillo, Contracts, 2d (1977) p. 19.

The facts in this record demonstrate that the question of whether there was an express contract, an implied in fact contract, or combination thereof, was preserved for resolution by the jury. The sick leave policy was specific. It was communicated to Metcalf through the formal orientation and documents provided during her probationary period. A jury could find that Metcalf accepted the offer by remaining employed after becoming aware of the sick leave program. If the jury were to decide that this language did not constitute an express term, it could still decide that the language and/or the surrounding circumstances were sufficient to find an implied in fact contract promising that employees would

**634**

not be penalized or subject to adverse personnel action for getting sick and missing work within the policy limits.

The issuance of "rules of conduct" may be evidence of a good cause criteria limitation on "at will" status or, as was found in *Jones v. EG & G Idaho, Inc.*, 111 Idaho 591, 726 P.2d 703 (1986) the statements of the employer may be so vague as to permit no reasonable expectations of protection on the part of the employees.[8]

The personnel policies of IGC, insofar as they address involuntary termination, are decidedly different than those discussed in *Jones*. In *Jones*, the employees were employed under a handbook which stated that the listed infractions which would warrant discharge were not all inclusive. The employees each misappropriated one pair of safety shoes. As a result they were fired. It was not an infraction enumerated in the employer's handbook, but the employees were on notice that the handbook was not all inclusive. There was no express or implied limitation on the employer's power to fine an employee for stealing work shoes from the business. To the contrary, the language that the list of infractions for which an employee could be fired "was not all inclusive" and at the very least implied that there were other reasons for which employees could be fired. As a result, there was no triable question of fact for the jury.

In this case, IGC's policy was far more elaborate, specific and more limiting in its intended application. Included in IGC's policy manual was § 605 which states:

RIGHT OF APPEAL

Any employee who feels that he has been unfairly suspended or terminated has the right to have his situation reviewed by the appropriate officer or vice president administrative services.

Taken as a whole, it is evident that IGC designed, implemented and distributed a sick leave policy which proposed to be "fair." Rather than listing *some* of the reasons for which an employee could be discharged, the portion of the IGC policy in question guaranteed the employee's right to a specified amount of sick leave. The employee took sick leave within those specified limits and was punished as a result. Hence, there is a triable issue of fact as to whether the employee relied upon the guarantees provided by the employer's personnel manual, and did not exceed those guarantees and whether such reliance was expected by the employer.

### III.

The majority opinion fails to address one further issue I deem worthy of comment.

### Breach of Public Policy

In granting summary judgment, the district court did not specifically address the punitive use of sick leave in the context of appellant's cause of action for breach of public policy. Instead, it held that the public policy claim is "tied to the sex and age discrimination complaints and therefore will not be dismissed." I disagree. The plain wording of the complaint did not so tie the three claims together. The sex and age discrimination claims are separate from the general breach of public policy claim. Furthermore, we need not determine whether a breach of public policy claim exists in addition to the breach of implied covenant of good faith and fair dealing claim because that issue was not raised on appeal.

BISTLINE, J., concurs.

---

**8.** When making this determination it is important to remember that the terms of any contract are not dictated by one phrase or list of conditions alone; rather by reading the language of the contract as a whole in an effort to discern its intent. *Beal v. Mars Larsen Ranch Corporation*, 99 Idaho 662, 586 P.2d 1378 (1978).