J. JONES, Justice,
concurring in the result.
While I concur in the result reached by the Court, this case presents a good opportunity to address some misconceptions that parties seem to have about the limits of the at-will employment doctrine and the scope of employment manual disclaimers. The situation is not as cut and dried as some litigants seem to think.
The first misconception, which appears to be fairly widespread based upon cases that have been presented to the Court in recent years, is that a disclaimer in a personnel policy manual saying that the manual is not a contract negates contractual status for any provision contained in the manual. That is simply not correct. In the present case, the Elmore County Personnel Policy (Policy) boldly states, “THIS PERSONNEL POLICY IS NOT A CONTRACT. NO CONTRACT OF EMPLOYMENT WITH ELMORE COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF THE GOVERNING BODY AND UNLESS IT IS SIGNED BY AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITTED BY THE CONTRACT.” Does this language mean that nothing contained in the Policy can have contractual status? The answer is no. The disclaimer means that the Policy, in whole, does not constitute a contract. It does not mean that individual provisions contained in the Policy may not be a part of the employer-employee contract.
Let us step back at this point and consider what constitutes the contract between an employer and employee. It starts with the employer needing help for a specific position or task. The employer makes his need known and offers the position with specific job requirements and benefits — hours to be worked, services to be provided, wages to be paid, benefits to be provided, and the like. The employee may negotiate some of the terms but when the parties agree that the employer will hire the employee, a contract is formed. There can be no employer-employee relationship without the formation of a contract between those parties. One of the terms of the contract that is often contested is the duration of the arrangement — how long will the contract be in effect. That is where the at-will doctrine comes into play.
An employment manual may or may not deal with the issue of contract duration. The Elmore County Policy does not deal with the issue of contract duration. There is nothing in the Policy that indicates that employment with Elmore County is at-will, on the one hand, or that it is of specific or continuing duration, on the other hand. The Policy does, however, contain a number of provisions that are contractual in nature and which this Court would obviously enforce in a legal action. Section IV: Employee Classification, Compensation and Benefits contains a number of such provisions. Subsection C. 6 allows accumulation of compensatory time if an employee must work more than 40 hours a week and provides that “[a]ny hours accrued over the 80 maximum will be paid during the pay period it was accrued or the following pay period.” Subsection C. 8 provides for payment of overtime work at one and a half times the hourly rate or, alternately, the granting of compensatory time at the same rate. Subsection C. 11 provides “[ljeave will be granted to full-time employees called to jury duty or to serve as a court witness: Full pay will be provided for the duration of such service.” Similarly, the Policy provides for a set schedule for accrual of vacation and entitlement to payment for unused vacation hours upon separation from employment, sick leave benefits, paid holidays, and the like. Specific to this case, the disciplinary section of the Policy provides: “The personnel policy of Elmore County es *322 tablishes the right for full-time regular and part-time employees to a hearing prior to any final decision on discharge, demotion with attendant change in pay, or suspension without pay.”
While the Policy, itself, is not a contract, it would be hard to deny that specific provisions in the Policy do form a part of the employment contract between Elmore County and its employees. If Elmore County refused to pay an employee at the agreed rate for hours worked, the employee would obviously have a cause of action based on the employment contract. If an employee separated from employment for any reason with unused vacation time, the employee would obviously be entitled to be paid in accordance with the Policy. For example, in Jackson v. Minidoka Irr. Dist., 98 Idaho 330, 335-36, 563 P.2d 54, 59-60 (1977), we held that an at-will employee was entitled to recover payment for vacation time accrued to the time of termination based on a provision in her employment handbook. We said: “Vacation pay may be a matter of contract between the employer and the employee. As with the pension plan, the provisions of the District’s handbook relating to vacation time become part of the employment contract.” Id.
Therefore, while the Policy, as a whole, is not a contract by virtue of the disclaimer, there are provisions in the Policy that evidence agreed-upon items of a contract between the employer and the employee. The language in the Policy disclaimer that “[n]o contract of employment with Elmore County will be valid unless it is signed in accordance ...” is obviously incorrect because the simple hiring of an employee causes a contract to come into effect. Elmore County simply cannot hire a person without a contract coming into existence. It may not be a written contract but it is a contract nevertheless.
The Policy does not include any provision indicating the duration of an Elmore County employee’s employment contract. There are individual provisions within the Policy that could be construed in favor of at-will status, meaning no specific duration such that the contract could be terminated at any time for any reason, or against at-will employment. Section IV.B speaks of a probationary period for new employees for the purpose of “observing the employee’s work ... and for rejecting an introductory employee whose performance is not satisfactory.” This provision, in itself, could be interpreted either way. That is, either that the employee can be terminated at any time during the probationary period or that the employee can only be terminated if his or her performance is not satisfactory. If the employee successfully completes the probationary period, he or she presumably becomes either a full-time regular employee under Section IV.A.l.a. or a part-time regular employee under Section IV.A.l.b. This might imply that once the employee runs the probationary gauntlet, he or she is immune from termination so long performance is satisfactory. Since the Policy does not contain a provision regarding the duration of any employment contract, the default position under Idaho law is that the contract is presumed to be at-will — subject to termination at any time. If the employee can point to specific evidence rebutting the presumption, the issue is a question of fact for decision by a jury.
Focusing back on the present case, even if it is determined that the duration of the contract here is at-will, i.e. of indefinite duration and terminable at any time, specific contractual formalities can still come into play. Counsel for Nix conceded during oral argument that her employment with Elmore County was at-will in nature. However, counsel contended that Nix was still entitled to the pre-discharge hearing provided in the Policy. Although counsel did not cite the specific case on point on this issue, we have previously stated that, although an employee at will may be discharged without cause and has no right to a hearing on the matter, where “a hearing is provided as a matter of contract ... the parameters of the hearing are also defined by the contract.” Jackson, 98 Idaho at 334, 563 P.2d 54 at 58. The hearing to which the employee may have been entitled in Jackson was contained in an employee handbook. In Jackson, however, the Court determined that the provision in the handbook did not provide for a hearing under the particular circumstances of Jackson’s termination.
*323 The provision in the Policy appears to be unequivocal in giving “full-time regular and part-time employees” the right to a pre-discharge hearing. This reading was bolstered at oral argument by the County’s counsel, who repeatedly stated that the pre-discharge provision was a “benefit” offered to County employees. If it is a benefit, it is a contractual provision regardless of the disclaimer in the Policy and subject to enforcement in a contract action.
Had Nix been a full-time regular or part-time employee at the time of her discharge, she would have been entitled to a pre-discharge hearing before her “Supervising Elected Official,” whoever that was — the Policy does not define that term or indicate who that may have been in Nix’s situation. However, at the time of her discharge, she was on probationary status. Under the Elmore County disciplinary framework, a supervisor may place an employee on probation. The probation here specifically stated, “You are, and remain, an at-will employee.” It also stated that if progress is not evident during the one-year probationary period, “you may be subject to immediate termination at any time during the probationary period.” The notice of disciplinary action was signed by Nix’s supervisor and Nix signed to acknowledge receiving the same. Although the Policy does not specifically set out the rights and obligations of an employee with regard to a probation that is not related to a new hire, the Court is correct in concluding that by continuing to work under the terms set out in the notice of disciplinary action, Nix impliedly agreed to work under such terms, including the term whereby she was subject to immediate termination for lack of progress on her disciplinary plan. Since she agreed to the plan and since she was not by virtue of her probation a full-time regular or part-time employee at the time of her discharge, she was not entitled to the pre-discharge hearing provided for the benefit of those types of employees. Thus, the Court has reached the correct result.